## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JACQUEST DIEUDONNE ITONGA MIANGO, *et al.*** | |
| Plaintiffs | |
| v. | Case No. 15-cv-01265 |
| **DEMOCRATIC REPUBLIC OF CONGO, *et al.*** | |
| Defendants | |

### REPLY TO PLAINTIFFS' OPPOSITION TO THE CAPELLA GROUP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

COMES NOW, Defendant Capella Hotel Group, LLC (the Capella Group), by and through undersigned counsel, and in reply to Plaintiffs' opposition to the Capella Group's motion to dismiss, states that Plaintiffs' claims remain legally inadequate and that the Court, therefore, should grant the Capella Group's motion to dismiss. In further support thereof, the Capella Group states as follows:

### INTRODUCTION

The factual allegations of this case have been covered extensively in prior filings. *See* Second Am. Compl., ECF No. 39; Capella Group's Mot. to Dismiss 2–3, ECF No. 67. Based upon the facts, Plaintiffs attempt to hold the Capella Group liable because the alleged attackers were staying at the Capella Hotel in Georgetown (the Capella Hotel). Specifically, Plaintiffs claim that the Capella Group is liable for (1) violating their First Amendment rights under 42 U.S.C. § 1983 (Second Am. Compl. ¶¶ 61–71); (2) the security force for the Democratic Republic of Congo's (DRC) delegation allegedly battering, assaulting, trespassing, and stealing from Plaintiffs under a theory of *respondeat superior* (*Id.* at ¶¶ 117–32, 173–77); and (3)

breaching its duty to protect Plaintiffs from the security force's alleged criminal conduct (*Id.* at ¶¶ 157–63).

Plaintiffs' claims must fail, however, as they do not allege that the Capella Hotel acted under color of state law, a prerequisite to maintaining a claim under the First Amendment; do not demonstrate that a principal/agent relationship existed between the Capella Hotel and the DRC delegation's security force; and do not present facts under which the Capella Hotel would owe Plaintiffs any legal duty.

## ANALYSIS

### I.      Plaintiffs fail to allege that the Capella Hotel acted under color of state law.

Nowhere in their complaint do Plaintiffs identify the Capella Hotel as a party against whom they are bringing their First Amendment claims. *See id.* at ¶¶ 61–71. Plaintiffs only identify the DRC, Joseph Kabila Kabange (President Kabila), and the DRC delegation's security force in their factual allegations. *See id.*

Additionally, Plaintiffs' factual allegations fail to show that the Capella Hotel was a state actor. The moniker of "state actor" is only applied to a private entity "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, (2001) (internal quotation marks and citation omitted) (emphasis added). While Plaintiffs' opposition attempts to argue that there is such a nexus, it is clear that none was properly alleged in the complaint and that none, in fact, actually exists.

Plaintiffs identify three bases for their claims that the Capella Hotel violated their First Amendment rights. Plaintiffs state that the DRC delegation and its security force were guests of the Capella Hotel. Pls.' Opp'n to Capella Group's Mot. to Dismiss 13, ECF No. 69. Plaintiffs

state that the Capella Hotel "relied on and benefited from" the security provided by the U.S.

Secret Service and the Metropolitan Police Department (MPD) by virtue the DRC delegation's

staying at its hotel. *Id.* Finally, Plaintiffs state that, after allegedly attacking them, the DRC

delegation's security forces returned to the hotel. *Id.* at 14.

The allegations that Plaintiffs identify come nowhere near describing "such a close nexus

between the State and the challenged action" that the hotel's behavior can be "fairly" attributed

to the state itself. *Id.* In fact, the "challenged action" at issue is not even that of the Capella

Hotel—it is the alleged attack perpetrated by the DRC delegation's security force. *See generally*

Second Am. Compl.

Plaintiffs present no authority supporting their bold position that providing a "place of

residence" to foreign citizens constitutes state action. *See* Pls.' Opp'n to Capella Group's Mot. to

Dismiss 13. Plaintiffs also fail to explain how the presence of U.S. Secret Service officers and

MPD officers in the hotel's vicinity makes the Capella Hotel a state actor. *Id.* Finally, Plaintiffs

provide no legal basis for their position that the Capella Hotel became a state actor when the

DRC delegation's security force returned to the hotel after the alleged attack. *Id.* at 14.

Because Plaintiffs fail to allege that the Capella Hotel acted under color of state law, the

Court should dismiss their First Amendment claims against the Capella Group.

## II.    Plaintiffs factual allegations do not show that a principal/agent relationship existed between the Capella Hotel and the DRC delegation's security force.

### A.    The Court is entitled to dismiss Plaintiffs' claims based upon their failure to allege that a principal/agent relationship existed.

Plaintiffs contend that the existence of a principal/agent relationship is a "question of

fact" and, therefore, not subject to dismissal at this stage in the litigation. *Id.* at 15. While the

existence of a principal/agent relationship may ultimately be a question of fact, Plaintiffs are not

entitled to escape the Capella Group's motion to dismiss because of it. *See Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 111–12 (D.D.C. 2010).

The plaintiffs in *Acosta* raised the same argument in response to a motion to dismiss based upon their failure to sufficiently allege the existence of a principal/agency relationship. *Id.* at 111 n.36. As the court pointed out, however, the question at the motion to dismiss stage "is not whether the plaintiffs have raised any genuine issue of material fact, but whether, focusing on the allegations in the complaint, the plaintiffs have adequately pled the elements of agency liability." *Id.* (citing *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, *5 (D.D.C. 2008)). Because the plaintiffs in *Acosta* asserted nothing more than a "formulaic recitation" of the elements of agency liability, the court dismissed their claim. 711 F. Supp. 2d at 112 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For the same reason, the Court should dismiss Plaintiffs' battery, assault, trespassing, conversion, and theft claims against the Capella Group as Plaintiffs have failed to sufficiently allege *any* facts that would support a principal/agent relationship.

**B.      Plaintiffs' factual allegations do not support the existence of a principal/agent relationship between the Capella Hotel and the DRC delegation's security force.**

The parties agree that determining whether a principal/agent relationship exists is governed by a five-factor test: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer." *Compare* Capella Group's Mot. to Dismiss 4 (quoting *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000)) *with* Pls.' Opp'n to Capella Group's Mot. to Dismiss 15–16 (citing *District of Columbia v. Hampton*, 666 A.2d 30, 38 (D.C. 1995). The parties also agree that, of those factors, the determinative factor is whether the principal has the right to control and direct the agent, both in terms of the final result and in

terms of the performance of the task. *Compare* Capella Group's Mot. to Dismiss 4 (quoting *Judah*, 744 A.2d at 1040) *with* Pls.' Opp'n to Capella Group's Mot. to Dismiss 15–16 (quoting *Hampton*, 666 A.2d at 39).

Plaintiffs identify two bases for claiming that a principal/agent relationship existed between the Capella Hotel and the DRC delegation's security force. Plaintiffs state that the Capella Hotel "had the right to confront" the DRC delegation's security force. Pls.' Opp'n to Capella Group's Mot. to Dismiss 16. Plaintiff also state that the Capella Hotel enjoyed a "beneficial relationship" with unidentified "Defendants" and relied upon them to "provide security." *Id.*

These allegations provide no support for the existence of a principal/agent relationship between the Capella Hotel and the security force. Neither the Capella Hotel's alleged "right to confront the actions of its guests" nor the alleged "beneficial relationship" addresses any of the factors involved in determining whether a principal/agent relationship exists. Most fatal, Plaintiffs' factual allegations provide no basis for finding that the Capella Hotel had the right to control and direct the security force's actions.

Because Plaintiffs' factual allegations fail to demonstrate that a principal/agent relationship existed between the Capella Hotel and the DRC delegation's security force, the Court should dismiss their claims against the Capella Group for battery, assault, trespassing, conversion, and theft.

### III.   The Capella Hotel did not owe Plaintiffs a duty of care to protect them from the criminal conduct of the DRC delegation's security force.

#### A.   Plaintiffs fail to show that they were business invitees of the hotel or that they were owed a duty of care.

D.C. courts restrict the duty of care that a business owes to its business invitees.[1] *See* Capella Group's Mot. to Dismiss 5 (citing several cases). Even when courts extend a business' duty of care beyond its front door, courts still limit the duty of care strictly to its business invitees. *See id.* at 5–6 (citing *Viands v. Safeway Stores, Inc.*, 107 A.2d 118 (D.C. 1954) and *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902 (D.C. Cir. 2006)). When courts extend the duty of care beyond a business' physical boundaries, courts also limit the duty to areas that the business makes "substantial special use" of. *Quigley's Pharmacy, Inc. v. Beebe*, 261 A.2d 242, 244 (D.C. 1970); *see also Novak*, 452 F.3d at 907–10 (detailing D.C.'s case law concerning the boundaries of a business' duty of care).

In *Quigley's Pharmacy*, for example, the Court of Appeals reviewed whether a pharmacy could be liable for a customer's injury after she exited the store and tripped on the sidewalk while walking towards a mailbox 20 feet from the store's entrance. *Id.* at 243–44. While the jury returned a verdict in favor of the customer, the Court of Appeals reversed. *Id.* at 244. The court found no evidence that the pharmacy's "invitees were attracted to the spot as a calculated or necessary means of ingress or egress or for other business-related purposes." *Id.* Rather, "the plaintiff was attracted to the spot not by anything the pharmacy did, but by her decision to use the mailbox." *Novak*, 452 F.3d at 909 (internal quotation marks omitted) (describing the *Quigley's Pharmacy* decision).

---

[1] Plaintiffs agree with this characterization of D.C. law: "As stated above, a business inviter [*sic*] is liable to customers for injuries caused by its failure to reasonably maintain its premises." Pls.' Opp'n to Capella Group's Mot. to Dismiss 18.

Under D.C. law, Plaintiffs' allegations do not support a duty of care owed to them by the Capella Hotel. Plaintiffs do not allege that they were guests, customers, or otherwise invitees of the Capella Hotel. *See generally* Second Am. Compl. Indeed, Plaintiffs freely admit that the incident occurred *across the street from the hotel* and that Plaintiffs never even stepped onto hotel property. *See generally id.* Plaintiffs also do not allege that the Capella Hotel has any connection to the sidewalk across the street, let alone that it makes "substantial special use" of the area. *See generally id.* If Plaintiffs' allegations suggest anything, it is that the sidewalk across the street served other commercial enterprises, such as the Canal Inn Hotel. *See id.* at ¶¶ 3, 35.

Plaintiffs recognize that the duty they seek to impose upon the Capella Hotel has never before been acknowledged. They assert that the Capella Hotel owed them a duty of care "that is at the identical level" of the duty of care owed by a business invitor to its invitee. Pls.' Opp'n to Capella Group's Mot. to Dismiss 17. They also maintain that D.C.'s case law concerning a business invitor's duty of care is "factually inapplicable" to the instant lawsuit. *Id.*

The lone case that Plaintiffs rely upon to establish the Capella Hotel's purported duty of care supports the Capella Group's position. *See* Pls.' Opp'n to Capella Group's Mot. to Dismiss 17 (citing *Banks v. Bank of Am., N.A.*, 505 F. Supp. 2d 159, 164 (D.D.C. 2007)). In *Banks*, a Bank of America customer brought suit after he was dragged outside of his branch by an off-duty MPD officer while attempting to make a deposit. 505 F. Supp. 2d 161–62. The bank moved for summary judgment asserting that it did not owe the customer a duty of care. *Id.* at 163.

Reviewing the bank's motion, the court examined D.C.'s law pertaining to the "duty of care to business invitees." *Id.* at 164. It relied upon the "well settled" "principles of law governing the duty of a business establishment with respect to the security of members of the public who are invited to enter and patronize it." *Id.* (citing *Seganish v. Dist. of Columbia*

*Safeway Stores, Inc.*, 406 F.2d 653, 655 (D.C. Cir. 1968)) One of those principles is that "a business invitor is not an insurer of customers' safety and is liable only for injuries resulting from his negligence." *Banks*, 505 F. Supp. 2d at 164 (internal quotations omitted) (quoting *Smith v. Safeway Stores, Inc.*, 206 A.2d 264, 265 (D.C. 1965)). The court also relied upon the Court of Appeals' holding in *Viands*:

> [A]n invitor is liable to a business invitee for injury caused by the accidental negligence or intentionally harmful acts of third persons if the invitor by the exercise of reasonable care could have (a) discovered that such acts were being done or were about to be done, and (b) protected the invitee by controlling the conduct of the third persons or giving a warning adequate to enable him to avoid the harm.

*Banks*, 505 F. Supp. 2d at 165 (quoting *Viands*, 107 A.2d at 120–21). While the *Banks* court ultimately concluded that the bank did owe a duty of care to its customer, the duty was owed to a business invitee—not a member of the general public. 505 F. Supp. 2d at 165.

Because Plaintiffs were not business invitees of the Capella Hotel and do not allege that the Capella Hotel made substantial special use of the sidewalk across the street, the Court should dismiss their negligence claims against the Capella Group. Plaintiffs' negligence claims especially warrant dismissal as Plaintiffs freely admit that they were aware of the prior atrocities of the DRC's government, were aware of their attackers' violent past, and had due notice of the danger that they incurred by choosing to protest publicly.

**B.     Plaintiffs fail to show that the Capella Hotel owed a duty to protect them from a third-party's criminal conduct.**

> ***1.     The Court is entitled to dismiss Plaintiffs' claims because the Capella Hotel did not owe a duty to protect them from a third-party's criminal conduct.***

Plaintiffs maintain that the foreseeability analysis involved in determining whether a duty to protect another from a third-party's criminal conduct exists is a "question of fact" and,

therefore, not subject to dismissal at this time. Pls.' Opp'n to Capella Group's Mot. to Dismiss 19. In support of their position, Plaintiffs rely upon *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 312 (D.C. Cir. 2009). Pls.' Opp'n to Capella Group's Mot. to Dismiss 19.

*Novak* does not stand for the proposition that foreseeability is a question of fact that must go before a jury. In *Novak*, a night club appealed from the trial court's denial of its motions for judgment as a matter of law after the jury returned a verdict in favor of its suing patrons. 570 F.3d at 311. The night club's post-trial motions were limited to the following subjects: (1) the sufficiency of the evidence presented at trial, (2) its assumption of the risk defense, and (3) the trial court's jury instructions concerning its use of the adjacent alley. *Id.*

Referring to its prior decision—relied upon by the Capella Group in its motion to dismiss (*See* Capella Group's Mot. to Dismiss 5, 7)—the D.C. Circuit explained why the evidence presented at trial was sufficient. *Id.* at 312. The court also affirmed the trial court's denial of the night club's other motions. *Id.* at 316. At no point in its decision did the D.C. Circuit conclude that analysis of whether a third-party's criminal conduct was foreseeable is a question of fact that must be presented to a jury. *See id.* at 312.

### 2. The Capella Hotel did not owe Plaintiffs a duty to protect them from a third-party's criminal conduct across the street.

As Plaintiffs had no relationship with the Capella Hotel, they must be able to demonstrate that the Capella Hotel had a "reason to anticipate the type of *particular* criminal attack that actually occurred." *Bd. of Trs. v. DiSalvo*, 974 A.2d 868, 873 (D.C. 2008). The burden of proof is on Plaintiffs to show that the Capella Hotel either had an "awareness of the precise risk"

involved or knew of crimes bearing "close similarity in nature or temporal and spatial proximity to the crime at issue." *Id.* at 874.[2]

Plaintiffs identify three bases for asserting that the Capella Hotel owed a duty to protect them from the alleged criminal conduct of the DRC delegation's security force. Plaintiffs state that the Capella Hotel should have known of the "rouge [*sic*] reputation of the foreign defendants." Pls.' Opp'n to Capella Group's Mot. to Dismiss 21. Plaintiffs state that the Capella Hotel should have known about the attack by the Gambian President's own security force the day before at the Hay Adams Hotel. *Id.* Finally, Plaintiffs state that the MPD knew that they might protest the DRC delegation. *Id.*

Plaintiffs' allegations do not support the "heightened showing of foreseeability" that is required to establish a duty to protect from a third-party's criminal conduct. *DiSalvo*, 974 A.2d at 870 (quoting *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997)). The DRC delegation's alleged "rogue reputation" made the Capella Hotel aware of neither a precise risk nor other crimes that were close in similarity. *See* Pls.' Opp'n to Capella Group's Mot. to Dismiss 21. Likewise, the allegation that the Capella Hotel should have known about the reaction of a different leader from a different country at a different hotel in response to a different protest does not make it foreseeable that DRC delegation's security force would attack protesters and a bystander on the sidewalk across the street from the Capella Hotel. *See id.* at 21. Plaintiffs' allegation that the MPD knew that Plaintiffs might hold a protest against the DRC delegation certainly does not support their position that the security force's alleged criminal conduct was foreseeable by the Capella Hotel. *Id.*

---

[2] While Plaintiffs assert that the Capella Group's authorities are factually distinguishable, they cannot distinguish away the entirety of D.C.'s case law on the duty to protect another from a third party's criminal conduct. *See* Pls.' Opp'n to Capella Group's Mot. to Dismiss 19–21.

Because Plaintiffs' factual allegations do not show that the alleged criminal conduct by the DRC delegation's security force was foreseeable by the Capella Hotel, the Court should dismiss Plaintiffs' negligence claims against the Capella Group.

## CONCLUSION

Plaintiffs fail to allege that the Capella Hotel acted under color of state law. Plaintiffs' factual allegations do not support the existence of a principal/agent relationship between the Capella Hotel and the DRC delegation's security force. Finally, Plaintiffs cannot show that the Capella Hotel owed a duty to protect them from the security force's alleged criminal conduct. Therefore, the Court should dismiss Plaintiffs' Second Amended Complaint against the Capella Group.

September 8, 2016                          Respectfully submitted,

                                           /s/ Heather S. Deane
                                           Heather S. Deane (DC Bar No. 471834)
                                           BONNER KIERNAN TREBACH & CROCIATA, LLP
                                           1233 20th Street, NW, Suite 800
                                           Washington, D.C. 20036
                                           T: (202) 712-7000
                                           F: (202) 712-7100
                                           hdeane@bonnerkiernan.com

                                           *Counsel for Capella Hotel Group, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 8, 2016 a copy of the foregoing *Reply to Plaintiffs' Opposition to the Capella Group's Motion to Dismiss Plaintiffs' Second Amended Complaint* was served through the CM/ECF system upon:

> George A. Rose
> The Rose Law Firm, LLC
> 200 E. Lexington Street, Suite 1305
> Baltimore, MD 21202

/s/ Heather S. Deane<br>Heather S. Deane