## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JACQUES DIEUDONNE ITONGA MIANGO, ET AL.** | * * * | |
| Plaintiffs**,** | * * | |
| **vs.** | * | **Case No. 15-cv-01265** |
| **DEMOCRATIC REPUBLIC OF THE CONGO, ET AL.** | * * * | |
| Defendants. | * * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINITFFS' COMPLAINT

     Plaintiffs, by and through their attorneys, George A. Rose, Esquire, and Rose Law Firm, LLC, hereby submits their response in opposition to the federal defendants' motion to dismiss Plaintiffs' complaint.[1] Plaintiffs sufficiently plead their claims under the federal rules and the federal law. In support of their response in opposition to the federal defendants' motion to dismiss Plaintiffs' complain, Plaintiffs rely on their accompanying memorandum of law. Plaintiffs also submitted a proposed order attached along with the accompanying memorandum of law for this motion.

Respectfully Submitted,

/ George A. Rose /

_____
George A. Rose, Esq. # 26086
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, Maryland 21202
Phone: 410-727-7555
Fax: 443-320-0962
Email: grose@roselawfirm.net

---

[1]     The federal defendants state that Plaintiffs only named the United States Secret Service as the only federal defendant, but the only proper defendant that would be liable to any of Plaintiffs' claims purported to be brought under the Federal Tort Claims Act (FTCA) is the United States of America *See* 28 U.S.C. § 2679. Thus, for the purposes of Plaintiffs' Response in Opposition to the federal defendants' Motion to Dismiss, this Response relates to the United States Secret Service and the United States of America (collectively stated as the "federal defendants'). The factual basis supporting Plaintiffs' claims, at all times pertinent hereto and as stated in Plaintiffs' accompanying memorandum of law, relates to the federal defendants' agents, who, at all times pertinent hereto, were actual and/or apparent agents, servants, and/or employees of the federal defendants. *See* Plaintiff's Second Amended Complaint, Dkt. #39; *see also* Plaintiffs' 01/05/2015 correspondence to the federal defendants, attached to Plaintiffs' accompanying memorandum of law as **Exhibit 1.**

**TABLE OF CONTENTS:  PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

I.      INTRODUCTION………………………………………………………………..

II.     STATEMENT OF FACTS AND/OR FACTUAL
        ALLEGATIONS…………………………………………………………………

III.    STANDARD OF REVIEW………………………………………………………

IV.     ARGUMENT……………………………………………………………………..

        A.  Plaintiffs exhausted their administrative remedies for their claims under
            the FCTA against the federal defendants……………………………………

            1.  Plaintiffs satisfied the noticed requirement under the FTCA for
                their claims against the federal defendants………………………………

                a.  Plaintiff Micheline Miango exhausted her administrative remedies
                    Under the FTCA for her loss of consortium claim against
                    the federal defendants………………………………………………

            2.  The federal defendants' cited case law to support its contention that
                Plaintiffs failed to exhaust their administrative remedies and that
                their claims are untimely is inapplicable here………………………………

        B.  The federal defendants are not shielded from liability to Plaintiffs
            for Plaintiffs' negligence and dereliction of duty claims under
            the doctrine of sovereign immunity………………………………………….

            1.  The federal defendants' cited case law to support its contention
                Plaintiffs' negligence and dereliction of duty against it are barred
                against the federal defendants under the doctrine of
                sovereign immunity is inapplicable here………………………………...

        C.  Plaintiffs sufficiently plead their constitutional claims against the
            federal defendants………………………………………………………………….

            1.  Plaintiffs' sufficiently plead their constitutional claims under
                the First Amendment against the federal defendants……………………….

a.  Plaintiffs' right to access a public forum and engage in peaceful
    political protests towards President Kabila's political regime in
    the DRC is Plaintiffs' First Amendment right that
    the federal defendants violated…………………………………………

2.  Plaintiffs sufficiently plead their claim against the federal defendants
    for violating Plaintiffs' constitutional rights under the Equal
    Protection Clause……………………………………………………………

    a.  The federal defendants' cited case law to support its contention
        that Plaintiffs' constitutional claim under the Equal Protection
        Clause against the federal defendants should be dismissed is
        inapplicable here…………………………………………………………

D.  Plaintiffs' sufficiently plead their negligence claims and dereliction of
    duty claims against the federal defendants and these claims are not barred by
    the public duty doctrine………………………………………………………..

    1.  The federal defendants' cited case law to support its contention
        Plaintiffs' negligence and dereliction of duty claims against
        the federal defendants are barred by the public duty doctrine
        are inapplicable here………………………………………………………...

V.     CONCLUSION…………………………………………………………………………

**TABLE OF AUTHORIIES: MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
RESPONSE IN OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' COMPLAINT**

I.      **Statues**

1.      28 U.S.C. § 2671-5
2.      28 U.S.C. § 1364
3.      U.S. Const. amend. I.
4.      U.S. Const. amend XIV

II.     **Cases (the cases are stated in alphabetical order)**

1.      Albright v. Oliver, 510 U.S. 266, 268 (1994)
        Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S. Ct. 633, 102
        L.Ed.2d 688 (1989).
2.      Anderson v. Local 201 Reinforcing Rodmen, 886 F. Supp. 94, 95 (D.D.C. 1995)
3.      Ardestani v. INS, 502 U.S. 129 S. Ct. 515 L. Ed. 2d 496 (1991).
4.      Brown v. Argenbright Sec., Inc., 782 A.2d 752 (D.C. 2001)
5.      Campbell-El v. District of Columbia, 881 F. Supp. 42  (D.D.C. 1995)
6.      Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 130 S. Ct. 876, 175 L. Ed. 2d
        753 (2010)
7.      Crowley v. N. Am. Telecommunications Ass'n., 691 A.2d 1169 (D.C. 1997)
8.      District of Columbia v. Forsman, 580 A.2d 1314 (D.C. 1990).
9.      Doe v. Sipper, 821 F. Supp. 2d 384 (D.D.C. 2011)
10.     Doe v. United States Dep't of Justice, 753 F.2d 1092 (D.C. Cir. 1985)
11.     EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C.Cir.1997)
12.     Fed. Election Comm'n v. Wisconsin Right To Life, Inc., 551 U.S. 449, 127 S. Ct. 2652,
        168 L. Ed. 2d 329 (2007)
13.     F.D.I.C v. Meyer, 510 U.S. 471 S. Ct. 996, 1001, 127 L. Ed. 2d 308 (1994).
14.     Flynn v. Tiede-Zoeller, Inc., 412 F. Supp. 2d 46, 50 (D.D.C. 2006)
        Founding Church of Scientology of Washington, D.C. v. Director, Federal Bureau of
        Investigation, et al., 459 F. Supp. 748 (1978).
15.     GAF Corp. v. United States, 818 F.2d 901, 919–20 (D.C.Cir.1987)
16.     Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993)
17.     Harris v. District of Columbia, 770 A.2d 82 (D.C. 2001).
18.     Hasse v. Sessions, 835 F.2d 902 (D.C. Cir. 1987).
19.     Hines v. District of Columbia, 532 A.2d 662 (D.C. 1987)
20.     Horn v. U.S.  Dept. of Veteran Affairs, 941 F. Supp. 2d 137 (D.D.C. 2013), aff'd, 13-
        5144, 2013 WL 5975966 (D.C. Cir. Oct. 17, 2013
21.     Hughes v. Rowe, 449 U.S. 5, 10 (1980)
22.     Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)
23.     Jackson v. United States, 857 F. Supp. 2d 158 (D.D.C. 2012).
24.     Jefferies v. Dist. of Columbia, 917 F. Supp. 2d 10 (D.D.C. 2013).
25.     Johnson v. District of Columbia, 580 A.2d 140
26.     Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).

27.    Klahr, et al. v. District of Columbia, et al., 576 A.2d 718.
28.    Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)
29.    Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993)
30.    Massengill v. Yuma County, 456 P.2d 376 (1969)
31.    Morgan v. District of Columbia, 468 A.2d 1306 (D.C. 1983).
32.    Norman v. United States, 377 F. Supp. 2d 96 (D.D.C. 2005), aff'd, 467 F.3d 773 (D.C. Cir. 2006).
33.    Platt v. District Columbia, 467 A.2d 149 (D.C. 1983)
34.    Powell v. District of Columbia, 602 A.2d 1123
35.    Ray v. Proxmire, 581 F.2d 998, 1003 (D.C. Cir.), cert. denied, 439 U.S. 933 (1978)
36.    Rise v. United States, 630 F.2d 1068 (5th Cir. 1980)
37.    Simpkins v. Dist. of Columbia Gov't, 108 F.3d 366 (D.C. Cir. 1997
38.    Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd., 502 U.S. 105, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991)
39.    Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923);
40.    Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981)
41.    Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002)
42.    Scruggs v. Bureau of Engraving and Printing CV 15-2205 (RJL), 2016 WL 4098314 (D.D.C. Aug. 1, 2016)
43.    Trifax Corp. v. District of Columbia, 314 F.3d 641 (D.C. Cir. 2003).
44.    Tsaknis v. United States, 517 F. Supp. 2d 295, 298 (D.D.C. 2007)
45.    Tucker v. United States Postal Serv., 676 F.2d 954 (3d Cir.1982)
46.    United States v. Mitchell, 463 U.S. 206, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983).
47.    United States v. Nordic Village In., 503 U.S. 30, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992).
48.    United States v. Testan, 424 U.S. 392, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976).
49.    U.S. Dept. of Air Force v. Fed. Labor Relations Auth., 648 F.3d 841 (D.C. Cir. 2011)
50.    Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074–75, 145 L. Ed. 2d 1060 (2000)
51.    Warren v. District of Columbia, 444 A.2d 1 (D.C. 1981).
52.    Warren v. United States Dep't of Interior Bureau of Land Management, 724 F.2d 776 (9th Cir. en banc 1984)
53.    Warth v. Seldin, 422 U.S. 490, 508 (1975).
54.    Weeda v. District of Columbia, 521 A.2d 1156 (D.C. 1987)

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

|                                                           |     |                          |
| --------------------------------------------------------- | --- | ------------------------ |
|                                                           | *   |                          |
| **JACQUES DIEUDONNE ITONGA MIANGO,** **ET AL.**           | *   |                          |
|                                                           | *   |                          |
|                                                           | *   |                          |
| Plaintiffs**,**                                           | *   |                          |
|                                                           | *   | **Case No. 15-cv-01265** |
| **vs.**                                                   | *   |                          |
|                                                           | *   |                          |
| **DEMOCRATIC REPUBLIC OF THE** **CONGO, ET AL.**          | *   |                          |
|                                                           | *   |                          |
| Defendants**.**                                           | *   |                          |
|                                                           | *   |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs, by and through their attorneys, George A. Rose, Esquire, and Rose Law Firm, LLC, hereby submits the memorandum of law in support of Plaintiffs' response in opposition to the federal defendants' motion to dismiss plaintiffs' complaint, and in support thereof states:

## I.      INTRODUCTION

In this action, Plaintiffs' seek declaratory, monetary and other appropriate relief.. Plaintiffs' seek to redress intentional violations by The federal defendants, among other defendants, of their rights secured under the U.S. Constitution, the Federal Tort Claims Act (FTCA), and District of Columbia Law common law, among other foreign, federal, and/or local laws. *See* Plaintiffs' Scnd. Amnd. Cmplnt, Dkt. #39 at ¶1. This action arose from of an August 6, 2014, incident in front of the Capella Georgetown Hotel in Washington, D.C., where the Plaintiffs, except Micheline Miango, were savagely attacked and brutally beaten by security force and/or agents and representatives of President Joseph Kabila of the Democratic Republic of the Congo ("DRC"). President Kabila and his security forces and/or agents and representatives were in the U.S. and

6

resided at the Cappella Hotel in order to attend the "U.S. African Leaders' Summit" in Washington D.C. from August 1, 2014 through August 6, 2014. Id.; *see also* Id. at ¶23. Plaintiffs were lawfully exercising their First Amendment rights by having protested peacefully on their political views against President Kabila's political regime, outside of the Cappella hotel on August 6, 2014: the topics of the protests included President Kabila's humanitarian and human rights violations that occurred in the DRC. *See generally* Id. at ¶1; *see also* Id. at ¶23-33. To stop these protests, President Kabila[3] ordered his security force to viciously attack and savagely beat Plaintiffs. Id. Additionally, Plaintiff Mr. Andre Ngoma was an innocent bystander's who was attacked and beaten because President Kabila's security force thought he was a Congolese protestor due to his race and national origin as an African.[4] Id.  The August 6, 2014 brutal attack on the Plaintiffs took place in the presence The federal defendants' agents and Defendant Metropolitan Police Department police officers, who were providing security, supervision, and control or otherwise in charge of President Kabila and his security force who attacked the Plaintiffs because of these protests. Id.

In direct opposition to Defendant USSS's motion to dismiss, Plaintiffs sufficiently plead their claims against The federal defendants under the federal and local rules. The federal defendants' Motion to Dismiss must be denied because: Plaintiffs properly presented their FTCA

---

[3] *See* Dkt. #39 at ¶12.  "Defendants Mr. Jeanmarie Kassamba, Mr. Jacques Mukaleng Makal, Mr. Sam Mpengo Mbey, Mr. Seraphin Ngwej, Mr. Raymond Tshibanda and Mr. Leonard Ngoy Lulu (who is now dismissed as a Plaintiff in this action) are sued in their individual and official capacities, (hereinafter "referred to collectively as "Individual/Official Capacity Defendants" are DRC nationals, officials, agents, representatives, friends, and/or officers of DR Congo Government and or Defendant Joseph Kabila. (emphasis added). At all times relevant, the Individual/Official Capacity Defendants, Individual and Official Capacity Defendants who brutally attacked and beat Mr. Miango and Mr. Ngoma, were staying at the Capella Georgetown Hotel with Defendant Joseph Kabila.

[4] At all times relevant hereto, Individual/Official Capacity Defendants who viciously attacked the other Plaintiffs, excluding Plaintiff Micheline Miango, believed that Mr. Ngoma was engaging in the political protest along with Plantiff Jacques Miango, and the other Plaintiff who alo engaged in the political protests on 08/06/2014. For the purposes of the pleading and this motion. *See* Dkt. #39 at ¶19.

claims against the federal defendants and therefore exhausted their administrative remedies; **(2)** Plaintiffs' negligence and dereliction of duty claims under the FTCA against Defendant fall under a waiver of sovereign immunity, either under the 'limited waiver' the FTCA provides or the waiver pursuant to the 'law enforcement proviso'. Therefore, The federal defendants is not shielded from liability to these Plaintiffs' under the doctrine of sovereign immunity; **(3)** Plaintiffs sufficiently plead their constitutional claims against the federal defendants because the federal defendants violated Plaintiffs' constitutional rights under the First Amendment and the Equal Protection Clause; and **(4)**  A special relationship exists between Plaintiffs and the federal defendants and therefore the public duty doctrine does not apply to these Plaintiffs' claims against The federal defendants. Therefore, Defendant is not shielded from liability to Plaintiff for these claims under the public duty doctrine.

## II.    STATEMENT OF FACTS AND/OR FACTUAL ALLEGATIONS

1.      For the purposes of this motion, Plaintiff incorporates as if fully set forth herein and by reference Plaintiff's second amended pleading  (Dkt. #39).

2.      As acknowledged in the federal defendants' motion, on January 5, 2015, Plaintiffs sent their "Notice of Claim" letter to Defendant USS. *See* Dkt. #85-1. Therein, Plaintiff stated the factual basis for Plaintiffs' claims against Defendant, and some of the claims against The federal defendants related thereto. *See* Id.

3.      On January 5, 2015 and January 14, 2015 respectively, Plaintiffs sent FOIA requests pursuant to the Freedom of Information Act (FOIA) to Defendant MPD, the United States Department of Homeland Security, and the United States Department of State. Specifically, Plaintiffs, among other things, requested for the disclosure of the identities President Joseph Kabila Kabange's (hereinafter "President Kabila") security force who attacked Plaintiffs on August 6,

2014. *See* Plaintiffs' 01/05/2015 FOIA request to DC Metropolitan Police Department, Plaintiffs'

01/14/2015 FOIA request to the US Department of State, collectively attached as **Exhibit 1**.

4.      On July 26, 2016, Plaintiffs came to know that the federal defendants were present

at the time Plaintiffs were attacked and beaten by President Kabila's security force, but also follow-

up with an investigation of these events. *See* Plaintiff's 07/26/2016 FOIA response from the United

States Department of State and the pertinent responsive documents related thereto, attached as

**Exhibit 2**. Therein, it states,

> At 18:00 on August 6, Liason Daniel Renna reported that DRC
> President Kabila Kabnge's security guards attacked three protestors
> standing across the street of the Cappella Hotel in Georgetown. As
> the presidential motorcade pulled into the driveway of the hotel
> seven Congolese security guards stood across the street creating a
> human barricade to prevent the protesters from approaching the
> DRC President…One of the three protestors who ran away from the
> scene was followed and attacked. The lead police officer for the
> motorcade shouted to the guards to stop while he called for backup
> in which minutes later…the uniformed Secret Service Police arrived
> to investigate the situation. Law enforcement cornered off the area
> and interviewed witnesses. The Secret Service is now leading the
> investigation…

*See* Id. at p. 3-4 (an 08/06/2014 email correspondence), attached as **Exhibit 2**.

5.      Thereafter, Plaintiffs filed their first amended and second amended pleading in

August 2015, February 2016, and May 2016 respectively. Therein all three of the pleadings alleged

the similar, if not identical, factual basis for Plaintiffs' claims as stated in Plaintiff's 01/05/2015

'Notice of Claim' to the federal defendants. *See* Dkt. #85-1**.** Further, this correspondence arose

from the events of the August 6, 2014 as stated in the above-referenced email. *See* Id., attached as

**Exhibit 2**. Thereafter, Plaintiffs served \the federal defendants with a Standard Form 95 (SF-95)

pursuant to the rules and therein provided a brief factual basis for Plaintiffs' claims. *See generally*

Dkt. #85-3. This factual basis was stated in Plaintiffs' original and amended pleadings. (*See* Dkt. #1, Dkt. #10, and Dkt. #39 respectively).

## III.   STANDARD OF REVIEW

"When a federal court reviews the sufficiency of a complaint, [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. *See* Id. [I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974). Plaintiffs do not suggest that their case is anything but substantially likely to prevail on the merits at a trial on its causes, however, Plaintiffs need not so prove this at this procedural stage.

"Where subject matter jurisdiction is challenged pursuant to [FRCP] 12(b)(1), the plaintiff has the burden of proving jurisdiction to survive the motion. *See* Warth v. Seldin, 422 U.S. 490, 508 (1975). The plaintiff will survive the motion to dismiss by showing any arguable basis in law for the claims set forth in the complaint." (Internal quotes omitted.) Michigan S. R.R. v. Branch & St. Joseph Counties Rail Users Ass'n, 287 F.3d 568, 573 (6th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is "viewed with disfavor, and is rarely granted." Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). This Court should construe plaintiffs' allegations liberally so as to do substantial justice. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (Federal Rules require only general or notice pleading, not detailed fact pleading); *see* Fed. R. Civ. P. 8(a)(2) (liberal pleading

standard); Ray v. Proxmire, 581 F.2d 998, 1003 (D.C. Cir.) (Supreme Court requires liberal reading of complaint in plaintiff's favor in review of motion to dismiss), cert. denied, 439 U.S. 933 (1978). Rule 8(a)'s simplified pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims." Swierkiewicz., 534 U.S. 506 at 508. The federal defendants face a heavy burden in bringing a motion to dismiss for failure to state a claim. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) (reversing dismissal for failure to state a claim); Hughes v. Rowe, 449 U.S. 5, 10 (1980) (complaint should only be dismissed if it appears beyond doubt that plaintiff cannot prove facts); Ray v. Proximire, 581 F.2d at 1003; Anderson v. Local 201 Reinforcing Rodmen, 886 F. Supp. 94, 95 (D.D.C. 1995). For purposes of ruling on defendants' motion, this Court must accept Plaintiffs' factual allegations as true. Albright v. Oliver, 510 U.S. 266, 268 (1994); Hartford Fire Ins. Co. v. California, 509 U.S. 764, 770 (1993); Doe v. United States Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985); Campbell-El v. District of Columbia, 881 F. Supp. 42, 43 (D.D.C. 1995). The Court must draw all reasonable facts and inferences in a light most favorable to plaintiff. *Doe*, 753 F.2d at 1102. In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, , and matters of public record, Flynn v. Tiede-Zoeller, Inc., 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (citing EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C.Cir.1997); also citing Marshall County Health Care

Auth. v. Shalala, 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Moreover, acceptance of documents

outside of the pleadings is at the discretion of the trial court. *See* Flynn, 422 F. Supp. 2d 46 at 50.

## IV.    ARGUMENT

### A.    **Plaintiffs exhausted their administrative remedies for their claims under the FCTA against the federal defendants**.

#### 1.    **Plaintiffs satisfied the noticed requirement under the FTCA for their claims against the federal defendants**.

For Plaintiffs' to bring their claims against the federal defendants, Plaintiffs must first

present its claim(s) to the federal defendants under the pertinent rules. *See* Tsaknis v. United

States[9], 517 F. Supp. 2d 295, 298 (D.D.C. 2007)(citing 28 U.S.C. § 2675(a)). Tsaknis clarified

when a claim qualified as "presented" within in the meaning of the FTCA, having stated,

> **For a claim to qualify as "presented" within the meaning of the statute, a plaintiff must meet a burden of "minimal notice" by submitting to the appropriate agency a written statement "sufficiently describing the injury to enable the agency to begin its own investigation" and containing a "sum-certain damages claim."** GAF Corp. v. United States, 818 F.2d 901, 919–20 (D.C.Cir.1987). However, plaintiffs are not required to substantiate their claims to the agency's satisfaction because the FTCA "did not shift ultimate responsibility for the adjudication of federal liability from the courts to the agencies, nor did it provide the agencies with leverage to impede claimant access to the courts." Id. at 917.

Tsaknis, 517 F. Supp. 2d 295 at 298-99. (emphasis added).

Tsakins relied on the Court's reasoning in Rise v. United States[10]. Rise dealt with the issue

of whether a plaintiff exhausted his administrative remedies under the FTCA for his claims against

---

[9] In Tsaknis, a widow of a patient (plaintiff) at the Army medical center brought an action under the FTCA against the United States, having alleged failure to administer proper chemotherapy treatment to the patient (plaintiff). After the defendant moved to dismiss the action, the trial court ruled that the plaintiff properly presented the claim to the defendant and therefore satisfied the FTCA notice requirement.

[10] 630 F.2d 1068 (5th Cir. 1980). In Rise, a retired army officer (plaintiff) filed negligence claims under the FTCA against the United States of America (defendant), among other defendants, for death of his wife. In his amended complaint, the plaintiff alleged that the army's referral of his wife to a civilian facility and that its

the defendant. Id. at 299. The Tsankis Court stated Rise was "factually on point and illustrates how

minimal notice can be under the FTCA presentment requirement." Id. Moreover, Tsaksis quoted

the Rise Court's reasoning that a plaintiff's claim under the FTCA against a federal agency does

not limit a plaintiff to bring only that claim against the federal agency stated in the initial FTCA-

related administrative filing. Id. The Rise Court rejected the defendant's contention that the

plaintiff did not properly present his claim, and any other claims the plaintiff had from the events

giving rise to the plaintiff's original claim against it:

> The [Rise] Court disagreed, however, finding that the mention in the
> administrative filing of Mrs. Rise's transfer to South Fulton Hospital
> in May 1973 provided sufficient notice that the defendant's referral
> and failure to supervise "were part of the chain of events that
> culminated in Mrs. Rise's death." Id. at 1071. **The court reasoned**
> **that "if the Government's investigation of Rise's [the plaintiff's]**
> **claim should have revealed theories of liability other than those**
> **specifically enumerated therein, those theories can properly be**
> **considered part of the claim**." Id.

Id. at 299. (quoting Rise, 630 F.2d 1068 at 1070-71)(emphasis added).

Continuing, Tskanis again relied on Rise to rule that the plaintiff's claims under the FTCA

against the defendant are not limited to only those claim(s) stated in the original FTCA-related

administrative filing. Id. In Rise, the Court ruled that the plaintiff's submission of materials to the

federal defendant, prior to filing her FTCA required administrative claim, provided sufficient

notice of the plaintiff's claims under the FTCA against the federal defendant:

> Similarly to Rise, plaintiff's January 2004 submission to Walter
> Reed provided enough information about the negligent
> chemotherapy treatment claim to meet the presentment requirement
> of minimal notice. **In this submission, plaintiff included the date**
> **of the decedent's death as the "date and day of accident,"**
> **indicating that her submission encompasses treatment that the**

---

subsequent failure to supervise her treatment constituted negligence claims pursuant to the FTCA. In pertinent
part, the Court of Appeals for the Fifth Circuit ruled that the plaintiff's administrative claim was sufficient to
support jurisdiction over amended complaint.

> **decedent received from Walter Reed up until his death**. Pl.'s Ex. D at 7, 11. Plaintiff also described the nature of the injury forming the basis of her claim as "[t]he failure to timely diagnose *and treat* the colon cancer of Peter J. Tsaknis, which led to *internal burns caused by chemotherapy* which led to neutropenic enterocolitis." *Id.* (emphasis added). **The attached medical expert opinions described the chemotherapy treatment** as follows…
>
> **These descriptions constitute sufficient notice to satisfy the FTCA presentment requirement because they provided enough information to allow Walter Reed to investigate the claim of negligent chemotherapy treatment**. Indeed, the Chairman of the Oncology Department at Walter Reed did investigate the decedent's chemotherapy treatment prior to his meeting with plaintiff. *See* Second Am. Compl. ¶ 42. **Although Walter Reed correctly notes that its investigation of the chemotherapy treatment occurred before plaintiff presented her administrative claim, *see* Defs.' Reply at 6–7, it does not directly follow that plaintiff's January 2004 letter provided Walter Reed with insufficient notice of the chemotherapy treatment claim**…

Id. at 299-300.

Here, Plaintiffs presented their claims and the entire factual basis related thereto to The federal defendants on January 5, 2015. *See* Dkt. #85-1; *see also* Plaintiffs' original and amended pleadings, Dkt. #1, Dkt. #10, and Dkt. #39. Thus, Plaintiffs satisfied the  notice requirement for their claims under the FTCA against The federal defendants. Moreover, although Plaintiffs only listed Plaintiff Jacques Miango in the 01/05/2015 correspondence to The federal defendants, the factual basis therein is substantially similar if not identical to the factual allegations to support Plaintiffs' claims in the original and amended pleadings. The federal defendants' agents were present at the scene on August 6, 2014 when Plaintiffs were attacked, and investigated the attacks that same day. *See* **Exhibit 2** at p. 3-4 (the 08/06/2014 email correspondence). In fact, The federal defendants already knew that at least two other Plaintiffs had identical claims against it. During this investigation, The federal defendants noted that at least **three political protestors** were attacked by President Kabila's security force on August 6, 2014. *See* Id.  From Defendant USSS'

14

investigation of the 08/06/2014 events stated in the 01/05/2015 correspondence and the pleadings, The federal defendants knew or should have reasonably known that Plaintiffs, including Plaintiff Jacques Miango, have viable claims under the FTCA and constitutional claims against it.

Additionally, like Tskansis, Plaintiffs' 01/05/2015 correspondence included in detail the "date and day of the accident[11]". *See* Tsaknis, 517 F. Supp. 2d 295 at 299(citing Rise, 630 F.2d 1068 at 1070-72; *see also* Dkt. #85-1. Finally, Tskansis ruled that "medical reports" and other materials provided sufficient notice under the FTCA for the plaintiff's claims against the Federal Defendant. Here, The federal defendants' likely obtained written materials that serve as summaries of witnesses and/or police report from their investigation of the August, 2014 events. Thus, The federal defendants obtained these materials within their regular course of business as law enforcement officers and as a result of their independent investigation of these events. *See generally* **Exhibit 2** at p. 3-4 (the 08/06/2014 email correspondence)(comparison to the Tskanis plaintiff. The Tskanis plaintiff presented "medical reports", materials obtained in the regular course of business as a health care provider, to present in order to demonstrate the plaintiff properly notified the defendant of her claims).

For these reasons, The federal defendants' agents knew that Mr. Miango was not the only 'potential plaintiff(s)' to bring claims under the FTCA and constitutional claims against it as a direct result of the August 6, 2014 events. Thus, Plaintiffs properly notified the federal defendants of their claims and therefore exhausted their administrative remedies to bring their claims under the FTCA and their constitutional claims against the federal defendants.[12]

---

[11] The Tskansis Court's interpretation of the term 'accident' can reasonably read to include events and/or factual allegations that give rise to a plaintiff(s)'s claims against a defendant(s).

[12] *See* GAF Corp. v. United States, 818 F.2d 901, 920 (D.C. Cir. 1987)(citing Warren v. United States Dep't of Interior Bureau of Land Management, 724 F.2d 776, 780 (9th Cir. *en banc* 1984). Accord, Tucker v. United States Postal Serv., 676 F.2d 954, 959 (3d Cir.1982) (presentment requirement of § 2675(a) satisfied where "claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate

> **a.     Plaintiff Micheline Miango exhausted her administrative remedies under the FTCA for her loss of consortium claim against the federal defendants**.

Where the martial relationship exists at the time of the occurrence (the August 6, 2014 occurrence giving rise to Plaintiffs' claims) a loss of consortium claim can be made by the spouse of the person who sustained physical injuries caused by the alleged tortfeasor. Crowley v. N. Am. Telecommunications Ass'n., 691 A.2d 1169, 1175 (D.C. 1997). Because Plaintiff Jacques Miango sufficiently plead his claims under the FTCA against the federal defnedants (specifically his negligence claim), the federal defendants is also liable to Plaintiff Micheline Miango for her loss of consortium claim related thereto. Mr. Miango and Mrs. Miango were legally married and in cohabitation. Moreover, Mrs. Miango's claim arose from the events of August 6, 2014 as stated in Plaintiffs' 01/05/2015 correspondence to the federal defendants and Plaintiffs' pleadings. *See* Dkt. #85-1; *see also* Dkt. #1, Dkt. #10, and Dkt. #39.

Plaintiff Jacques Miango, along with the other Plaintiffs exhausted their administrative remedies to bring their claims under the FTCA against The federal defendants. Because Ms. Miango's loss of consortium claim is a direct result of Mr. Miango's claims under the FTCA against the federal defendants, Mrs. Miango, as Mr. Miango's wife at the time of the 08/06/2014 events stated in the 01/05/205 correspondence to the federal defendants (Dkt. #85-1) and the pleadings, exhausted her administrative remedies to bring this claim against the federal defendants.

---

and (2) places a value on his or her claim")(emphasis added). Here, Plaintiffs' 01/05/2015 correspondence to The federal defendants set forth the entire factual basis of Plaintiffs' claims against The federal defendants and placed a value on those claims with the sum of $10,000,000.00. *See* **Exhibit 2**.

Therefore, Mrs. Miango sufficiently plead her loss of consortium claim against the federal defendants and her claim must not be dismissed.

> ## 2. The federal defendants' cited case law to support its contention that Plaintiffs failed to exhaust their administrative remedies and that their claims are untimely is inapplicable here.

Defendants' cited case law to support its contention as stated above are legally, factually, and/or procedurally inapplicable here.

In Norman v. United States, the plaintiff brought a negligence action against the defendant as a result of a motor vehicle collision. 377 F. Supp. 2d 96 (D.D.C. 2005), aff'd, 467 F.3d 773 (D.C. Cir. 2006). At the time of the plaintiff's filed lawsuit, the plaintiff did not know that the defendant / at-fault driver was an employee of the United States and acted within the scope of his employment during the motor vehicle collision. Id. In fact, a few months after filing suit, the plaintiff first came to know of the defendant driver was a United States' employee. Id. Therefore, the United States was the proper defendant and required that the plaintiff exhaust his administrative remedies under the FTCA, which Plaintiff failed to do because he did not know the defendant driver's employer when he filed his lawsuit. Id.  The Court ruled that the plaintiff's ignorance in failing to find out that the defendant driver's employer was the United States prior to his filed lawsuit did not toll plaintiff's requirement to exhaust his administrative remedies under the FTCA. Id. at 96. Thus, the court barred the plaintiff's claims under the FTCA against the federal defendant. Id.

In Horn v. U.S.  Dept. of Veteran Affairs, a veteran (plaintiff) brought an action against the U.S. Department of Veterans Affairs (defendant / federal agency) and managers of transitional housing. 941 F. Supp. 2d 137 (D.D.C. 2013), aff'd, 13-5144, 2013 WL 5975966 (D.C. Cir. Oct. 17, 2013). The plaintiff alleged conspiracy, fraud, duress, denial of due process, fraudulent

concealment, false claims, intimidation, personal humiliation, and willful neglect, arising out of alleged conditions of veteran's transitional housing. Id. The Court dismissed the plaintiff's claims because the plaintiff failed to exhaust his administrative remedies under the FTCA. Id. In doing so, the Court ruled that because the plaintiff did not present the factual basis for his claims directly to the defendant and only referenced his correspondence related to a Freedom of Information Act (FOIA) request, the plaintiff failed to exhaust his administrative remedies against the defendant. Id. at 139.

In Jackson v. United States, the Court ruled that the plaintiff failed to exhaust his administrative remedies under the FTCA against the federal defendant. 857 F. Supp. 2d 158 (D.D.C. 2012). The Court noted that there was no record of the plaintiff ever having presented an administrative claim or materials related to the factual basis for the plaintiff's claims to the federal defendant, prior to the plaintiff filing a lawsuit against it. Id. at 161.

Here, the federal defendants' agents acted within the scope of their employment[13] as U.S. secret services agents at all times pertinent to the August 6, 2014 events. *See* Dkt. #85-1; *see also* Plaintiffs' pleadings, Dkt. #1, Dkt #10, and Dkt. #39.   Plaintiffs timely presented the federal defendants with the entire factual basis for their claims against them prior to filing their original complaint. *See* **Exhibit 2 (**the 08/06/2014 email correspondence). Unlike the federal defendants' cited cases, Plaintiffs' claims are timely and Plaintiffs exhausted their administrative remedies for their FTCA claims. For these reasons, Plaintiffs' claims against the federal defendants must not be dismissed on these grounds.

---

[13] *See* Doe v. Sipper, 821 F. Supp. 2d 384, 388 (D.D.C. 2011)("Scope of employment is ordinarily a question for the jury…"); *see also* Brown v. Argenbright Sec., Inc., 782 A.2d 752, 757 (D.C. 2001)("As a general rule, whether an employee is acting within the scope of his employment is a question of fact for the jury."))

**B.      The federal defendants are not shielded from liability to Plaintiffs for Plaintiffs' negligence and dereliction of duty claims under  the doctrine of sovereign immunity**.

Plaintiffs' claims under the FTCA against the federal defendants are not barred under the

Doctrine of sovereign immunity. The Court in <u>Scruggs v. Bureau of Engraving and Printing</u> carved

out the circumstances for 'waiver of sovereign immunity'. The <u>Scruggs</u> Court ruled that when a

plaintiff brings a claim(s) under the FTCA against a federal defendant, the FTCA 'operates as a

limited waiver of sovereign immunity…" for this claim(s). CV 15-2205 (RJL), 2016 WL 4098314,

at *3 (D.D.C. Aug. 1, 2016). Here, the federal defendants' agents failed to take an affirmative act

to protect Plaintiffs from the attacks by President Kabila's security force. *See* Dkt. #39 at <u>Id</u>. at

¶33-37. Instead, the federal defendants' agents passively observed Plaintiffs' being attacked,

beaten and robbed by Defendant Kabila's enforcers, agents and representatives. <u>Id</u>.

For these reasons, Plaintiffs' negligence claims, and dereliction of duty claims under the

FTCA  are covered under a waiver of sovereign immunity. Thus, the federal defendants are not

shielded from liability to Plaintiffs for these claims under the doctrine of sovereign immunity.

Therefore, Plaintiffs' negligence claims and dereliction of duty claims under the FTCA against the

federal defendants must not be dismissed on these grounds.

> **1.   The federal defendants' cited case law to support its contention that Plaintiffs' negligence and dereliction of duty against it are barred under the doctrine of sovereign immunity is inapplicable here.**

The federal defendants' cited case law to support its contention as stated above are

legally, factually, and/or procedurally inapplicable here.

In <u>United States v. Nordic Village Inc</u>., a chapter 7 bankruptcy trustee (plaintiff) brought

an adversary proceeding to recover an unauthorized post-petition transfer to the Internal Revenue

Service (IRS). 503 U.S. 30, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992). In pertinent part, Nordic

Village dealt with the issue of waiver of sovereign immunity under Section 106 of the Bankruptcy Code. Id. at 1013. Moreover, this matter was heard in the United States Bankruptcy Court before the U.S. Supreme Court granting the plaintiff's petition for certiorari to hear the issue stated above. Id. at 1011. In United States v. Mitchell, the Court ruled that the Tucker Act[14] constituted waiver of sovereign immunity. 463 U.S. 206, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983). The U.S. Supreme Court in U. S. v. Testan ruled that; (1) the Tucker Act does not create any substantive right enforceable against the United States for money damages; and (2) that neither the Classification Act nor the Back Pay Act creates substantive right to back pay for the period of claimed wrongful classifications. 424 U.S. 392, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976).

Ardestani v. INS involved an immigration law issue, specifically an application for an asylum and an award of attorney's fees under the Equal Access to Justice Act (EAJA). 502 U.S. 129, 112 S. Ct. 515, 116 L. Ed. 2d 496 (1991). In pertinent part, the Court ruled that administrative deportation proceedings are not "adversary adjudications" under section 554 for which the EAJA waives sovereign immunity and authorizes award of attorney fees and costs. Id.

In. U.S. Dept. of Air Force v. Fed. Labor Relations Auth., the Air Force petition for a review of a decision and order of the Federal Labor Relations Authority. 648 F.3d 841 (D.C. Cir. 2011). Pertinent hereto, the issue before the court involved the 'waiver provision' of the Federal Labor Relations Authority. Id. at 845.

---

[14] See generally 28 U.S.C. §§ 1346(a) and 1491. The Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the original Court of Claims' jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. Specifically, the Tucker Act permits three kinds of claims against the government: (1) contractual claims, (2) noncontractual claims where the plaintiff seeks the return of money paid to the government and (3) noncontractual claims where the plaintiff asserts that he is entitled to payment by the government.

Hasse v. Sessions involved a plaintiff seeking injunctive and declaratory relief against the defendant. 835 F.2d 902 (D.C. Cir. 1987). In Hasse, the plaintiff claimed that the defendant conducted an illegal search of his luggage during his return from the United States to Nicaragua. Id.

In GAF Corp. v. United States, government contractors (plaintiffs) sought indemnification or contribution in separate actions against the United States by reason of having settled or satisfied judgments in underlying asbestos cases. 818 F.2d 901 (D.C. Cir. 1987). GAP Corp. involved the Federal Tort Claims Act, where the Court ruled that the FTCA's 'limited waiver of sovereign immunity' will not be granted unless the FTCA's presentment requirements are met. The Court ruled that the plaintiffs satisfied the presentment requirements. In doing so, the Court ruled that for a plaintiff to satisfy the FTCA's presentment requirement, (**presentment requirement of § 2675(a) satisfied where "claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim"**)). Id at 920 (citing Warren v. United States Dep't of Interior Bureau of Land Management, 724 F.2d 776, 780 (9th Cir. *en banc* 1984). Accord, Tucker v. United States Postal Serv., 676 F.2d 954, 959 (3d Cir.1982)).(emphasis added).

In Simpkins v. Dist. of Columbia Gov't, a physician (plaintiff) sued multiple defendants, among others being the District of Columba and the Secretary of Health and Human Resources (federal defendants) for multiple claims. Some of the plaintiff's claims against the federal defendants were covered under the FTCA 108 F.3d 366 (D.C. Cir. 1997). The Court dismissed the plaintiff's claims under the FTCA against the federal defendants. Id. Pertinent hereto, the plaintiff, before every filing an administrative claim or material(s) sufficient to satisfy the FTCA's presentment requirement, immediately filed their lawsuit against the federal defendants. Id. at 368.

Finally, as stated above, the Court in <u>Jackson v. United States</u>, ruled that the plaintiff failed to exhaust the FTCA's administrative remedies. 857 F. Supp. 2d 158 (D.D.C. 2012). In doing so, the Court noted that there was no record of the plaintiff ever having presented an administrative claim or materials related to the factual basis for the plaintiff's claims to the federal defendant, prior to the plaintiff filing a lawsuit against it. <u>Id</u>. at 161.

Here, Plaintiffs' 01/05/2015 correspondence to the federal defendants complied with the relevant law. *See* Dkt. #85-1; *see generally* <u>GAF Corp. v. United States</u>, 818 F.2d 901 (D.C. Cir. 1987). This correspondence: (1) set forth the entire factual basis of Plaintiffs' claims covered under the FTCA, among other claims, against the federal defendants; and (2) placed a value on those claims with the sum of $10,000,000.00. *See* Dkt. #85-1. Moreover, Plaintiffs' negligence claims and dereliction of duty claims against the federal defendants, as stated above, are covered under the waiver of sovereign immunity. For these reasons, Plaintiffs' FTCA negligence and dereliction of duty claims against the federal defendants must not be dismissed because; (1) Plaintiffs' exhausted their remedies in order to bring these claims against rhe federal defendants; and (2) the federal defendants are not protected from liability to Plaintiffs for these claims under the doctrine of sovereign immunity.

### C.   <u>Plaintiffs sufficiently plead their constitutional claims against the federal defendants</u>.

As a preliminary statement, the federal defendants contend that Plaintiff Jacques Miango is the only plaintiff that brought constitutional claims against them. *See* Def's Mtn. p. 8 (Dkt. #85). However, as stated above, all Plaintiffs properly brought their FTCA claims and constitutional

claims against the federal defendants.[16] Therefore, this argument relates to all Plaintiffs and not just Plaintiff Jacques Miango.

In F.D.I.C v. Meyer, a discharged employee of a failed savings and loan association (plaintiff) brought a constitutional claim against Federal Savings and Loan Insurance Corporation (FSLIC) (defendant). 510 U.S. 471 S. Ct. 996, 1001, 127 L. Ed. 2d 308 (1994). The plaintiff claimed that the Defendant's employee, a special representative and one of plaintiff's supervisors, discharged the employee in violation of his Fifth Amendment Due Process rights. Id. The Court ruled the plaintiff's constitutional claim was not 'cognizable' under the FTCA. In doing so, the Court stated,

> Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "render[ed]" itself liable. *Richards v. United States,* 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962). This category includes claims that are:"[1] **against the United States, [2] for money damages**, ... [3] **for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred**." 28 U.S.C. § 1346(b).
>
> A claim comes within this jurisdictional grant—and thus is "cognizable" under § 1346(b)—if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it alleges the six elements outlined above. *See* Loeffler*, supra,* 486 U.S., at 562, 108 S. Ct., at 1973 (§ 2679(a) limits the scope of sue-and-be-sued waivers "in the context of suits for which [Congress] *provided a cause of action* under the FTCA" (emphasis added).[5]

---

[16] *See* Tsaknis, 517 F. Supp. 2d 295 at 298-99 (citing Rise, 630 F.2d 1068 at 1069-72), *supra*; *see also* Dkt. #85-1; *See also* Exhibit 2; *see also* Dkt. #1, Dkt. #10, and Dkt. #39. The federal defendants knew as early as August 6, 2014 that at least three protestors against President Kabila's political regime were attacked and beaten by President Kabila's security force. Moreover, Plaintiffs' 01/05/2015 correspondence to the federal defendants stated the factual basis for Plaintiffs, and Plaintiffs' claims against the federal defendants. This factual basis was also stated in the Plaintiffs' original and amended pleadings.

Id. at 477 (emphasis added).

      **1.**      **Plaintiffs' sufficiently plead their constitutional claims under the First Amendment against the federal defendants.**

          **a.**      **Plaintiffs' right to access a public forum and engage in peaceful political protests towards President Kabila's political regime in the DRC is Plaintiffs' First Amendment right that the federal defendants violated.**

The U.S. Supreme Court in Perry Educ. Ass'n v. Perry Local Educators' Ass'n, ruled that "the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." 460 U.S. 37, 44, 103 S. Ct. 948, 954, 74 L. Ed. 2d 794 (1983).[17] Here, Plaintiffs were engaged in a peaceful political protest on a public forum, a public sidewalk outside of the Cappella Hotel, before they were attacked by President Kabila's security force. These protests are a lawful exercise of Plaintiffs' First Amendment rights, and are awarded the highest level of protection the U.S. Constitution provides.[18] The federal defendants' agents inaction to protect Plaintiffs from President Kabila's agents and security enforcers' attacks on them because of these protests,

---

[17] See Id. The First Amendment's guarantee of free speech applies to teacher's mailboxes as surely as it does elsewhere within the school, Tinker v. Des Moines School District, supra, and on sidewalks outside, Police Department of Chicago v. Mosely, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). But this is not to say that the First Amendment requires equivalent access to all parts of a school building in which some form of communicative activity occurs. "Nowhere [have we] suggested that students, teachers, or anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for ... unlimited expressive purposes." Grayned v. City of Rockford, 408 U.S. 104, 117–118, 92 S. Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972). The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.)

[18] See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 340, 130 S. Ct. 876, 898, 175 L. Ed. 2d 753 (2010)("For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are "subject to strict scrutiny," which requires the Government to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." WRTL, 551 U.S., at 464, 127 S. Ct. 2652 (opinion of ROBERTS, C.J.). While it might be maintained that political speech simply cannot be banned or restricted as a categorical matter, see Simon & Schuster, 502 U.S., at 124, 112 S. Ct. 501 (KENNEDY, J., concurring in judgment)…"

violated Plaintiffs' First Amendment right to access a public forum to engage in these peaceful political protests.

From a practical standpoint, there is no cognizable 'compelling interest' the federal defendants could posit where they could further that interest by impinging Plaintiffs' rights to engage in political speech on a public forum, in order to express their viewpoint against the DRC's president, President Kabila and his repressive regime in the DRC. (President Kabila's humanitarian and human rights violations as the President of the DRC). *See* Dkt. #39 at ¶21, 23, 26-28. Hypothetically, for instance, The federal defendants' posited 'compelling interest' is to protect the foreign government official, President Kabila, which includes preventing DRC asylees and/or African Americans from engaging in peaceful political protests against his political regime. This 'compelling interest' cannot be narrowly tailored enough to further this interest where, by doing so, law enforcement officials will allow President Kabila's security force to attack and savagely beat Plaintiffs because of Plaintiffs' lawful exercise of their first amendment rights, i.e., Plaintiffs' right to access a public forum and engage in peaceful political protests against President Kabila's visit and presence in the U.S. due to his human rights violations and repressive regime in the DRC. Here, the U.S. secret service agents' inaction to protect Plaintiffs from the 08/06/2014 attacks and beatings violated Plaintiffs' First Amendment rights. Therefore, Plaintiffs' constitutional claims under the First Amendment against the federal defendants must not be dismissed.

> **2.     Plaintiffs sufficiently plead their claim against the federal defendants for violating Plaintiffs' constitutional rights under the Equal Protection Clause.**

'[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination,

whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074–75, 145 L. Ed. 2d 1060 (2000)(citing <u>Sioux City Bridge Co.</u>, *supra,* at 445, 43 S. Ct. 190 (also citing (quoting <u>Sunday Lake Iron Co. v. Township of Wakefield</u>, 247 U.S. 350, 352, 38 S. Ct. 495, 62 L. Ed. 1154 (1918))). Continuing, the <u>Vill. Of Willowbrook</u> Court noted, successful equal protection claims "**where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment**. (emphasis added)"[21]

Here, Plaintiffs did not allege they were a and/or within an already established specialized class of persons under the U.S. Constitution, including Title VII. Here, however, Plaintiffs are a specialized 'class of persons' under the law. The facts and circumstances giving rise to Plaintiffs' claims against the federal defendants demonstrate that their agents' inaction violated Plaintiffs' constitutional rights under the Fourteenth Amendment's Equal Protection Clause. Plaintiffs, who are DRC asylees and/or lawful permanent residents in the U.S., engaged in conduct well within their First Amendment constitutional rights; peaceful political protests in a public forum. *See* Dkt. #39 at ¶23-25. These protests were against the DRC President, Defendant Kabila, and in doing so, Plaintiffs expressed their political viewpoints in opposition to and against President Kabila's political regime. <u>Id</u>. Plaintiffs engaged in these protests right outside the hotel where President

---

[21] citing <u>Sioux City Bridge Co. v. Dakota County</u>, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923); <u>Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.</u>, 488 U.S. 336, 109 S. Ct. 633, 102 L.Ed.2d 688 (1989). Even in <u>Vill. Of Willowbrook</u>, the U.S. Supreme Court ruled that the plaintiff could assert his equal protection claim against the defendant under the "class of one" theory. Moreover, the plaintiff did not claim that he was protected under a class enumerated under the U.S. Constitution and case law, but claimed that he was intentionally treated differently, and there was no rational basis for this differential treatment.

Kabila and his security force resided for the "U.S. – Africa Leaders' Summit", from 08/01/2014 – 08/06/2014. Id. at ¶24.

Further, the federal defendants may posit a rational basis for failing to protect Plaintiffs from attacks, beatings and theft by President Kabila's security force. *See generally* Vill. of Willowbrook v. Olech, 528 U.S. 562, at 564-65. However, there is no rational basis for the U.S. Service Agents who were acting within the scope of their employment, to fail to take an affirmative act to protect Plaintiffs' from the attacks, beatings and theft by Defendant Kabila and his agents and security enforcers. *See* Dkt. #39 at ¶30, 33-36.

Plaintiffs' peaceful political protests on a public forum against Defendant Kabila's U.S. visit due to his human rights abuses and repressive political regime in the DRC is a lawful exercise of Plaintiffs' First Amendment rights. The factual basis for Plaintiffs' constitutional claims under the Equal Protection Clause demonstrates that Plaintiffs are a distinct class of persons under the law. The federal defendants' inaction to protect Plaintiffs from the attacks by President Kabila's agents and security enforcers demonstrates the federal defendants' arbitrary differential treatment to Plaintiffs because their protests. Therefore, Plaintiffs sufficiently plead their constitutional claim under the Equal Protection Clause against the federal defendants.

      **a.**      **The federal defendants' cited case law to support its contention that Plaintiffs' constitutional claim under the Equal Protection Clause against the federal defendants should be dismissed is inapplicable here**.

The federal defendants' cited case law to support its contention as stated above are legally, factually, and/or procedurally inapplicable here. In Founding Church of Scientology of Washington, D.C. v. Director, Federal Bureau of Investigation, et al., the Founding Church of Scientology of Washington, D.C. (plaintiff) is a non-profit corporation chartered and operating under the laws of the District of Columbia as a religious organization practicing the religion of

Scientology. 459 F. Supp. 748 (1978). The plaintiff brought this case as a class action, purporting to represent "all Churches of Scientology and Scientology missions located throughout the United States. Id. The plaintiff alleges that it, as well as the class it seeks to represent, had been the subject of a government-wide conspiracy to destroy a religion. Id. The plaintiff claims that its constitutional and statutory rights have been violated in that the defendants have improperly maintained and disseminated information regarding the plaintiff; harassed, observed, and infiltrated the plaintiff organization; "blacklisted" members of the plaintiff; and subjected the plaintiff to discriminatory tax audits. The plaintiff alleged that these actions of the defendants were in violation of, among others, the Equal Protection Clause. Id. Moreover, the plaintiff only sought an injunction as a remedy. Id. at 760.

Here, Plaintiffs, who are DRC asylees and/or lawful permanent residents in the U.S. engaged in conduct well within their First Amendment constitutional rights; peaceful political protests in a public forum. See Dkt. #39 at ¶23-25. These protests were against the DRC President (Defendant Kabila) and in doing so, Plaintiffs expressed their political viewpoints in opposition to and against President Kabila's human rights abuses and repressive political regime. Id. Plaintiffs engaged in these protests right outside the hotel where President Kabila and his security force resided for the "U.S. – Africa Leaders' Summit", from 08/01/2014 – 08/06/2014. Id. at ¶24.

Plaintiffs' basis for their constitutional claim under the Equal Protection Clause against The federal defendants is not under Title VII. Rather, Plaintiffs lawfully exercised their First Amendment rights; they peacefully protested President Kabila's human rights abuses and repressive political regime in the DRC, directly outside of the hotel President Kabila resided for the "U.S. – Africa Leaders' Summit". Here, the factual basis for Plaintiffs' claims under the Equal Protection Clause against the federal defendants demonstrates that Plaintiffs are a distinct class of

persons under the law. President Kabila's security force viciously attacked and beat Plaintiffs because of Plaintiffs' protests, and the federal defendants took no affirmative act to prevent these attacks and beatings.  The federal defendants' inaction to protect Plaintiffs from the attacks, beatings, and theft demonstrates the federal defendants' arbitrary differential treatment to Plaintiffs; persons who were lawfully exercising their First Amendment rights.  For these reasons, unlike in Founding Church of Scientology of Washington, D.C., Plaintiffs sufficiently plead their constitutional claim under the Fourteenth Amendment's Equal Protection Clause against the federal defendants.

**D.**     **Plaintiffs' sufficiently plead their negligence claims and dereliction of duty claims against the federal defendants and these claims are not barred by the public duty doctrine**.

Since a special relationship existed between Plaintiffs and the federal defendants as it relates to the above stated August 6, 2014 events, the public duty doctrine does not bar Plaintiffs' negligence and dereliction of duty claims against them. In Powell v. District of Columbia, the Court stated,

> Under the public duty doctrine, [the government] and its agents owe no duty to provide public services to particular citizens as individuals. Instead, absent some "special relationship" between the government and the individual, the District's duty is to provide public services to the public at large.

See 602 A.2d 1123, 1125 (D.C. 1992)(citing Hines v. District of Columbia, 532 A.2d 662 (D.C. 1987)(also citing Turner v. District of Columbia, 532 A.2d 662 (D.C. 1987); also citing Morgan v. District of Columbia , 468 A.2d 1306 (D.C. 1983(en banc); Platt v. District Columbia, 467 A.2d 149 (D.C. 1983); also citing Warren v. District of Columbia, 444 A.2d 1 (D.C. 1981)(en banc).

Continuing, the Court stated,

> …in the area of police services, the court explained that a special legal duty is created **"when there is a course of conduct, special**

**knowledge of possible harm, or the actual use of individuals in
the [criminal] investigation."**

Powell, 602 A.2d 1123 at 1129 (citing Warren, 444 A.2d at 3, *supra*).

The Court in Powell set forth a two-prong test for determining whether a special relationship exists between a plaintiff and law enforcement. To prove a special relationship existed the plaintiff must demonstrate: (1) a direct contact or continuing contact between the victim and the governmental agency or official; and (2) justifiable reliance on the part of the victim. Id. at 1130 (citing Platt, 467 A.2d 149 at 151; also citing Warren, 444 A.2d at 11)).

Here, President Kabila and his agents and security enforcers resided at the Cappella Hotel to attend the "U.S. Africa Leaders' Summit" from 08/01/2014 – 08/06/2014. *See* Dkt. #39 at ¶22. Defendant District of Columbia Metropolitan Police Department was notified by Plaintiff Mr. Miango that this 08/06/2014 political protest will take place outside of the Cappella Hotel, at least a day before the 08/06/2014 occurrence took place. Id. at ¶25. The federal defendants also occupied the Cappella Hotel and were present when the attacks, beatings and theft against Plaintiffs ensued, and merely observed the attacks, beatings and theft, but took no action against the perpetrators. Id. at ¶27, ¶33-36. Further, upon information belief at this stage in the litigation, the only affirmative act by The federal defendants was an investigation of the 08/06/2014 events after Plaintiffs were attacked. *See* Id.; *see also* **Exhibit 2**. There is a video to show the federal defendants' agents, while acting in their official capacity, observed President Kabila's security force attack Plaintiffs while they were protesting. *See* Dkt. #39 at ¶33.

Given public knowledge about human rights abuses and political persecution in the DRC, it is reasonable to believe a  DRC asylee or native living in the U.S., would express his political views in a public forum against President Kabila's political regime; a lawful exercise of the protestor's First Amendment rights. Here, Plaintiffs engaged in peaceful political protests in a

public forum, on the street sidewalk outside of the Cappella Hotel, the place where President Kabila and his agents and security enforcers were residing. As a direct result of the protests, Plaintiffs were attacked, beaten, and had property stolen by President Kabila's agents and security enforcers, while federal defendants' agents merely observed these attacks and beatings.

It is even more reasonable to believe Plaintiffs justifiably relied on law enforcement officials, including the federal defendants' agents, from being attacked because of their protests. Specifically, for the federal defendants' agents to protect them from being attacked by President Kabila's security force because of their political protests on a public forum against President Kabila's regime. Give the document history of human rights abuses by President Kabila and his security enforcers, it is reasonable that the federal defendants should have known that President Kabila and his security enforcers are the persons who would likely incite violence because of these protests, and upon their attacks on Plaintiffs, the federal defendants agents merely observed Kabila's security force savagely attacked, beat and rob them. Id. at ¶33-36.

The foregoing demonstrates that the federal defendants had a special duty to protect Plaintiffs from the attacks on August 6, 2014, and Plaintiffs justifiably relied on law enforcement, including the federal defendants, to be protected from attacks because of their protests. Thus, a special relationship existed between Plaintiffs and the federal defendants. Therefore, Plaintiffs' negligence and dereliction of duty claims against the federal defendants are not barred by the public duty doctrine.

1. **The federal defendants' cited case law to support its contention Plaintiffs' negligence and dereliction of duty claims against the federal defendants are barred by the public duty doctrine are inapplicable here.**

The federal defendants' cited case law to support its contention as stated above are legally, factually, and/or procedurally inapplicable here.

In, <u>Jefferies v. Dist. of Columbia</u>, a mother of 16-year-old African-American girl who was killed in retaliatory drive-by shooting (plaintiff) brought action against District of Columbia and police chief (collectively "federal defendants"), among others. 917 F. Supp. 2d 10 (D.D.C. 2013). In <u>Jefferies</u>, The plaintiff asserted due process and equal protection claims under § 1983, as well as common law claims for, among other things, wrongful death, reckless endangerment, and intentional infliction of emotional distress. <u>Id</u>.  The Court ruled that the special relationship exception to the public duty doctrine did not apply to the plaintiff's claims against the federal defendants. <u>Id</u>. To determine whether a special relationship existed between the plaintiff and the federal defendant, the Court applied the two-prong test that was applied in <u>Platt</u> and  <u>Warren</u> for this issue. <u>Id</u>. (citing <u>Platt</u>, *supra*; also citing <u>Warren</u>, *supra*). The Court determined the plaintiff did not show 'reliance' and therefore did not satisfy the second prong of the two-prong test:

> [the plaintiff's] Complaint does not allege there were *any* contacts between District officials and the plaintiff or decedent, other than the "contact" between the ambulance operators and Ms. Jones. *See* Compl. ¶ 42. The Court examines the conduct of ambulance operators separately, in the following section. Nothing else in the Complaint alleges a "direct transaction with the party injured or an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured." <u>Powell</u>, 602 A.2d at 1130.

<u>Jefferies</u>, 917 F. Supp. 2d 10 at 33.

<u>Warren v. District of Columbia</u> involved suits against the D.C. police department and individual D.C. police officers for negligent failure to provide adequate police services. 444 A.2d 1 (D.C. 1981). The Court ultimately ruled that the plaintiff failed to fit within the class of persons to whom a special duty was owed and affirmed the trial court's dismissal of her complaint. Id. The basis for the trial court's dismissal was that the plaintiff's claims were barred under the public duty doctrine. <u>Id</u>. In pertinent part, the Court ruled that the fact the police answered a call and arrived outside the premises which was a scene of burglary and assaults did not give rise to a special duty

on the part of the police and the victims therein. Id. The Court furthered ruled that where unknown occupants in a vehicle which rear-ended another, proceeded to then batter the operator of the foremost vehicle, the duty of the office arriving on the scene was directly related to his official and general duty to investigate offenses. Id. Therein, the Court belittled the plaintiffs' claims against the federal defendants. The federal defendants answered the calls of the plaintiffs' voiced emergency, and like any law enforcement officers, took affirmative acts to assist the plaintiffs because of their voiced emergency. Id. at 7. The Court notes that the cornerstone of plaintiffs' claims were simply that the plaintiffs' did not agree with the way the defendants conducted their business as law enforcement officers. In its reasoning, the Court stated,

> Plaintiffs contend that although the Metropolitan Police Department may not have been under a specific duty to these plaintiffs at the time of the initial telephone complaint, the police undertook an obligation by taking some action toward rendering assistance. Plaintiffs seem to be saying that no liability would have attached had the police operator refused plaintiffs' call, had the dispatcher refused to transmit the message, or had the officers refused to respond. However, plaintiffs' argument continues, once the operator, dispatcher and officers took some action to assist plaintiffs, they all became personally answerable in money damages for failing to render assistance adequate to meet plaintiffs' needs.

Id. at 6-7.

Continuing, the Warren Court 'mocked' the plaintiffs' baseless claims stating the following,

> Plaintiffs in this action would have the Court and a jury of twelve additional community representatives join in the responsibility of judging the adequacy of a public employee's performance in office. Plaintiffs' proposition would lead to results which the Massengill Court aptly described as "staggering." Massengill v. Yuma County, supra at 523, 456 P.2d at 381. In this case plaintiffs ask the Court and jury to arrogate to themselves the power to determine, for example, whether defendant Officer Thompson acted in a manner consistent with good police practice when he volunteered to stake out a suspect's house rather than volunteering to report to the crime scene. Consistent with this contention then, should a Court and jury

> also undertake to sift through clues known to the police in order to determine whether a criminal could reasonably have been apprehended before committing a second crime?...

Id. at 8.

In Taylor v. District of Columbia, a murder victim's mother (plaintiff) field a wrongful death and survival action against District of Columbia (defendant). 776 A.2d 1208, 1219 (D.C. 2001). The plaintiff claimed that the defendant was negligent by failing to properly protect the victim in connection with his alleged role as police informant, and his negligence proximately caused the murder of the victim. Id. Taylor ruled that public duty doctrine precluded recovery, as the mother failed to present evidence showing that the victim justifiably relied on the police for protection, or that he was an informant for the police. In doing so, Taylor ruled that the plaintiff's justifiable reliance on an affirmative undertaking by the police to protect him was virtually non-existent. Moreover, the Court ruled that there was little evidence to support 'justifiable reliance' in this case. Id. at 1218-20. The Court ruled that the only support plaintiff had for 'justifiable reliance' was hearsay testimony from a discovery deposition and an Affidavit submitted in discovery. Id. In fact, the Affidavit included information that the plaintiff did not know the defendant was an informant for the police, which was pertinent to the plaintiff's claims. Id.

In Harris v. District of Columbia, a father, as the parent of one child and as personal representative of other child's estate (plaintiff), filed negligence action against District of Columbia (defendant). 770 A.2d 82 (D.C. 2001). The plaintiff claimed that the defendant's employees failed to prevent abuse of his children. who were living with their mother. In pertinent part, the Court ruled that the defendant, in fact, owed a special duty towards the children and therefore the plaintiff's claims were not barred under the public duty doctrine. Id.

In Morgan v. District of Columbia, the plaintiff brought a negligence and wrongful death action against the District of Columbia (defendant) that is attributable to the DC police officer's

killing and wounding members of his family with his service revolver. 468 A.2d 1306 (D.C. 1983).

The Court in <u>Morgan</u> ruled that the plaintiff's claims were barred under the public duty doctrine.

<u>Id</u>. In doing so, the Court ruled that no special relationship existed between the DC police

department and the wife of a DC police officer who had been threatened by her husband with his

service revolver. <u>Id</u>. Moreover, the Court ruled that the DC police captain did not affirmatively

undertake an obligation of protecting the police officer's wife who was threatened, nor did the

police officer's wife particularly rely upon the police captain to protect her. <u>Id</u>.

 <u>District of Columbia v. Forsman</u> involved property owners (plaintiffs) having brought a

negligence action against the District of Columbia (defendant). 580 A.2d 1314 (D.C. 1990). The

plaintiffs claimed that the defendant failed to require the adjacent landowner to obtain a demolition

permit prior to commencing underpinning work that led to the collapse of the plaintiffs' property.

Id.  In <u>Trifax Corp. v. District of Columbia</u>, a government contractor (plaintiff) brought a lawsuit

against the District of Columbia (defendant) among other DC agencies and officials. 314 F.3d 641

(D.C. Cir. 2003). The plaintiff claimed that the District of Columbia Office of Inspector General

(OIG) violated the plaintiff's due process under the Fifth Amendment by releasing alleged

defamatory audit report. Id.

 In <u>Klahr, et al. v. District of Columbia, et al.</u>, the estates of murder victims (plaintiffs)

brought wrongful death and survival actions against the District of Columbia officials

(defendants). 576 A.2d 718. <u>Klahr</u> involved a person who was confined halfway house. The

pertinent times for the plaintiffs' claims took place from March 7th to March 8th 1984, 7pm to 7am

respectively. <u>Id</u>. The halfway house was monitored by District of Columbia officials, who were

assigned to monitor the confined persons' job performance and check on his presence every night.

At around 1:45 am on March 8th, the confined person escaped and robbed and murdered two

persons. Id. at 719 The Court ruled that the defendants were immune under the public duty doctrine to the plaintiffs, from allegedly failing to monitor the escapee from the halfway house who robbed and murdered the two persons. Id.

In Powell v. District of Columbia, a car owner (plaintiff) brought suit against the District of Columbia (defendant), claiming that the defendant negligently issued her registration certificate and license plates that the defendant had previously issued to another person. 602 A.2d 1123. Further, that the defendant negligently entered her registration information into the area's law enforcement system. Id. The Court ruled that the defendant had a special relationship with the plaintiff and therefore the plaintiff's negligence claims against the defendant were not barred under the public duty doctrine. Id.

Johnson v. District of Columbia involved emergency ambulance services and not a law enforcement officer's affirmative act or omission of act in his capacity as a law enforcement officer. 580 A.2d 140. In Johnson, as it relates to whether firefighters took an affirmative act of rescuing the plaintiff. Id. The Court stated,

> …Appellant must show that some act of the firefighters administering emergency medical assistant to Ms. Tol'iver actually made Ms. Tolliver's condition worse than it would have been if the firefighters failed to show up at all or done nothing after their arrival. We have adumbrated this minimum requirement in the rescue context in discussing municipal liability for acts of "affirmative negligence." Warren, supra note 1, 444 A.2d at 7-8 (duty may be established in a case of "affirmative negligence" where, for example, there is "negligent handling of a police dog, negligent operation of a police vehicle, [or] negligent use of a weapon"). Cf. Weeda v. District of Columbia, 521 A.2d 1156 (D.C. 1987)(no indication that the public duty doctrine would bar [an] action based on [an] ambulance crew's negligent act of extricating [the] plaintiff from wreckage of [an] automobile if such extrication worsened [the] plaintiff's injury).

Id. at 142.

Hines v. District of Columbia also involved emergency ambulance services. 580 A.2d 133. In Hines, the estates of the decedents (plaintiffs) brought wrongful death and survival actions against the District of Columbia (defendant). Id. The plaintiffs claimed that the DC's EMT personnel were negligent in relation to the dispatch of the emergency medical care and transportation. Id. The emergency ambulance division (EAD) and the DC employees who were involved in the dispatch of the medical care, equipment, and transportation to the decedents were shielded from liability to the plaintiffs under the public duty doctrine. Id.

Here, the factual basis for Plaintiffs' negligence and dereliction of duty claims against the federal defendants demonstrates that a special relationship exists between them. A special relationship exists between Plaintiffs and the federal defendants and therefore the public duty doctrine does not apply to these claims against federal defendants because:

(1) Plaintiffs, who are DRC natives and/or asylees, and/or living in the U.S. as lawful permanent residents, engaged in peaceful political protest on a public forum against President Kabila's human rights violation and repressive political regime as the President of the DRC. These protests took place on public sidewalk outside of and/or across the street from the hotel where President Kabila and his security enforcers resided for the "U.S. Africa Leaders' Summit" from August 1, 2014 – August 6, 2014;

(2) President Kabila's security enforcers are the persons who would reasonably be incited to take violent action towards Plaintiffs' because of their protests;

(3) The federal defendants likely knew or reasonably should have known that Plaintiffs would engage in the protests because Plaintiffs notified the Metropolitan Police Department of their intention to protest prior to August 6, 2014; and

(4) U.S. Secret Service agents who were acting within the scope of their employment observed the attacks on Plaintiffs by President Kabila's security enforcers, and failed to take an affirmative act to prevent these attacks, beatings and theft of property. The only action the federal defendants took was their independent investigation of the August 6, 2014 events after the attacks, beatings and theft of property took place.

For these reasons, and unlike the federal defendants' cited cases, with the exclusion of Powell, the factual basis for Plaintiffs' negligence and dereliction of duty claims against the federal

defendants demonstrate that a special relationship exists between them.  Thus, the public duty doctrine does not apply to these claims against the federal defendants. Therefore, Plaintiffs sufficiently plead their negligence and dereliction of duty claims against the federal defendants, and these claims must not be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs sufficiently plead their claims under the Federal Tort Claims Act (FTCA) and constitutional claims against the federal defendants. First, Plaintiffs properly presented their FTCA claims against the federal defendants and therefore exhausted their administrative remedies. Second, Plaintiffs' claims fall under a waiver of sovereign immunity, either under the 'limited waiver' the FTCA provides or the waiver pursuant to the 'law enforcement proviso'.  Third, Plaintiffs sufficiently plead their constitutional claims against the federal defendants because the federal defendants' agents violated Plaintiffs' constitutional rights under the First Amendment and the Equal Protection Clause. Finally, a special relationship exists between Plaintiffs and the federal defendants and therefore the public duty doctrine does not apply to these claims against the federal defendants. Therefore, the federal defendants are not shielded from liability to Plaintiff for these claims under the public duty doctrine.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: (1) deny the federal defendants' motion to dismiss Plaintiffs' complaint; and (2) grant Plaintiffs any such other relief the cause may require.

Respectfully Submitted,

*/ George A. Rose /*
_____
George A. Rose, Esq. # 26086
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, Maryland 21202

Phone: 410-727-7555
Fax: 443-320-0962
Email: grose@roselawfirm.net

## **REQUEST FOR A HEARING**

Plaintiffs request a hearing regarding Plaintiffs' response in opposition to the federal defendants' motion to dismiss Plaintiffs' complaint, and Plaintiffs' response in opposition to the federal defendants' motion to dismiss plaintiffs' complaint.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of January 2017, a copy of the foregoing Plaintiffs' response in opposition to the federal defendants' motion to dismiss plaintiffs' complaint was emailed through the court's e-filing system (ECF) to: Heather S. Deane, Esq., (hdean@bktc.net), Patricia B. Donkor, Esq., (patricia.donkor@dc.gov), Michael Addo, Esq., (michael.addo@dc.gov), and Wynne Patrick Kelly, Esq., (wynn.kelly@usdoj.gov), counsels for Defendants.

Respectfully Submitted,

*/ George A. Rose /*
_____