UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JACQUES DIEUDONNE ITONG MIANGO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEMOCRATIC REPUBLIC OF CONGO *Embassy of the Democratic Republic of the Congo*, *et al.*, <br><br> Defendants. | Civil Action No. 15-1265 (ABJ) |

## MEMORANDUM OPINION

Plaintiffs Jacques Miango, Matala Kayaya, and Ouwo Likutu filed a lawsuit alleging that they were beaten by security forces of the Democratic Republic of the Congo ("DRC") when they participated in a protest across the street from the Washington, D.C. hotel where the DRC President and his delegation were staying. *See* Second Am. Compl. [Dkt. # 39] ¶¶ 21–26. The lawsuit was brought against a number of defendants, including the DRC; the president of the DRC, Joseph Kabila Kabange; and five individuals who were allegedly part of the president's entourage. *Id.* ¶¶ 6, 7, 12. On January 16, 2018, the Court granted the plaintiffs' motion for default judgment as to these seven defendants. Mem. Op. [Dkt. # 131].

Pending before the Court are the five individuals' motion to vacate the default judgment and motion to dismiss the case for lack of jurisdiction, on the grounds that they are entitled to immunity under the Diplomatic Relations Act or the common-law foreign official immunity doctrine. Defs.' Mot. to Vacate Default J. & Mot. to Dismiss [Dkt. # 133] ("Defs.' Mot."); Defs.'

Mem. in Supp. of Defs.' Mot. [Dkt. # 133-1] ("Defs.' Mem."). Plaintiffs have opposed the motion. Pls.' Opp. to Defs.' Mot. [Dkt. # 138] ("Pls.' Opp.").

Because the Court finds that the five individual defendants are entitled to immunity under the common-law foreign official immunity doctrine, it will grant their motion to vacate the default judgment, and these defendants will be dismissed from the case.[1]

## BACKGROUND

The factual and procedural background of this case are laid out in detail in the Court's Memorandum Opinion granting motions to dismiss filed by other defendants – the District of Columbia Metropolitan Police Department, the United States Secret Service, Capella Hotel Groups, LLC, and Castleton Hotel Partners, LLC. *See Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 120–23 (D.D.C. 2017). Therefore, the Court will address the facts only briefly here.

Plaintiff Jacques Miango is a refugee of the DRC who lives in Maryland with his wife, plaintiff Micheline Miango. Second Am. Compl. ¶ 2. He describes himself as "a known opponent and activist against the DRC government['s] human rights violations." *Id.* Plaintiffs Matala Kayaya and Ouwo Likutu are Congolese by national original and are legal residents of Maryland. *Id.* ¶¶ 4–5.

On August 6, 2014, plaintiffs Miango, Kayaya, and Likutu staged a protest against the DRC on the sidewalk across the street from the Capella Hotel. Second Am. Compl. ¶¶ 24, 27. Shortly after they arrived, plaintiffs saw the DRC's press official, defendant Jeanmarie Kassamba, returning to the hotel. *Id.* ¶ 27. Miango and his fellow protestors shouted at defendant Kassamba

---

1  The Court notes that the defendants could have resolved this issue much sooner and spared plaintiffs and the Court considerable time and effort had they filed a timely responsive pleading instead of waiting until after the entry of judgment against them to enter the case.

2

and held up signs condemning rape, corruption, genocide, dictatorship, and human rights violations in the DRC. *Id*. Defendant Kassamba entered the hotel and came back out with "apparent security enforcers of the Kabila regime[.]" *Id.* ¶ 28. Plaintiffs claim that the DRC security forces approached Miango and "began belittling, threatening, intimidating and disrupting" him and the other protestors. *Id*. Soon after, President Kabila arrived at the hotel. *Id.* ¶ 31. Miango started shouting at him, and plaintiffs claim that the President recognized Miango as a "dissident." *Id.*

According to the complaint, after President Kabila entered the hotel, another group of DRC security forces "rushed out" of the building and joined the group already harassing Miango and the other protestors. Second Am. Compl. ¶ 32. They "immediately began physically attacking" the protestors, and though plaintiff Kayaya was able to escape, Miango was "knocked down to the ground, beaten, kicked, choked, and stomped on" by the security forces. *Id*. As a result, Miango lost several teeth and suffered a concussion and injuries to his spine and neck. *Id*. Plaintiffs allege that after the DRC security forces beat Miango, some of the security forces broke into his parked car and stole protest materials, a computer, an iPod, a camera, and other property belonging to plaintiffs. *Id.* ¶ 34.

Plaintiffs filed their Second Amended Complaint on May 10, 2016, alleging various torts and constitutional claims against the DRC, Joseph Kabila Kabange, Jeanmarie Kassamba, Jacques Mukaleng Makal, Seraphin Ngwej, Raymond Tshibanda, Leonard Ngoy Lulu, Sam Mpengo Mbey, the United States Secret Service, District of Columbia Metropolitan Police Department ("MPD"), Castleton Hotel Partners LLC, and Capella Hotels Group LLC. *See* Second Am. Compl. The Court dismissed the claims against the Secret Service, MPD, Castleton Hotels and Capella

Hotels, *see Miango*, 243 F. Supp. 3d at 113, and it terminated defendant Lulu since he was never properly served. *See* Min. Order (Dec. 15, 2016).

At that point, fourteen counts remained against the DRC and the six individual defendants. The seven defendants failed to file an answer or otherwise respond to plaintiffs' complaint. On March 22, 2017, the Clerk of the Court entered default as to all seven defendants, *see* Clerk's Order of Default [Dkt. # 114], and plaintiffs on that same day moved for default judgment. *See* Mots. For Default J. [Dkts. ## 116–23]. On January 16, 2018, the Court granted default judgment against the seven defendants. Mem. Op. [Dkt. # 131]. On May 7, 2018, the six individual defendants entered an appearance and moved to vacate the default judgment and to dismiss the case. Defs.' Mot.; Defs.' Mem.

Because the motion to dismiss and motion to vacate default judgment raised important questions related to foreign sovereign immunity, on October 25, 2018, the Court sought the input of the Department of State, pursuant to 27 U.S.C. § 517. Letter from the Court to the United States Dep't of State [Dkt. # 141] ("10/25/18 Letter"). Specifically, the Court requested the Department's views on two issues:

    1.    The Department of State's position as to the immunity of the defendants as diplomatic agents under the Diplomatic Relations Act, and

    2.    The Department of State's position as to the immunity of DRC President Joseph Kabila as an official "head-of-state."

*Id.* at 2.

On December 3, 2018, the Department of State filed a Suggestion of Immunity for President Kabila, [Dkt. # 142], and the Court invited plaintiffs to submit their views as to why President Kabila should not be dismissed from the case. Min. Order (Dec. 3, 2018). Plaintiffs did not respond, and on January 19, 2019, the Court granted defendants' motion to vacate default

4

judgment and motion to dismiss as to defendant President Kabila. Order [Dkt. # 144]. The Department of State sought additional time to provide its views on the five remaining individual defendants, *see, e.g.*, Min. Order (Dec. 3, 2018); Min. Order (Feb. 19, 2019); Min. Order (Mar. 20, 2019), and on May 1, 2019, the Department of State finally filed a statement of interest, stating that it needed additional facts before it could determine whether these defendants were immune. Statement of Interest Submitted by the United States of America [Dkt. # 151] ("Statement of Interest") at 7–10.

The agency concluded that the individuals did not qualify for diplomatic immunity under the Diplomatic Relations Act, Statement of Interest at 5–7, but that discovery would aid in its determination of whether they were immune from suit under principles of common-law immunity. *Id.* at 7–9. The Court invited the parties to respond to the State Department's statement. Min. Order (May 2, 2019). The parties were in agreement that no jurisdictional discovery was necessary, and that the Court should determine the issue of immunity based upon the papers. Defs.' Resp. to Statement of Interest [Dkt. # 152] ("Defs.' Resp."); Pls.' Resp. to Statement of Interest [Dkt. # 153] ("Pls.' Resp.").

**STANDARD OF REVIEW**

**I.   Relief from Judgment**

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party from a judgment or order for any one of six reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b). All motions must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "The party seeking relief from judgment bears the burden of proof." *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011).

Rule 60(b)(4) applies when a judgment is void. A judgment is considered void if the court lacks subject-matter jurisdiction in the case. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010); *Ramirez v. Dep't of Justice*, 680 F. Supp. 2d 208, 210 (D.D.C. 2010). A judgment is also void if the court, although having jurisdiction, enters a judgment "not within the powers granted to it by the law." *United States v. Walker*, 109 U.S. 258, 266 (1883). "[I]f the judgment is void, relief is mandatory." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987).

## II. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l*

6

*Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

The individual defendants ask the Court to vacate the default judgment entered against them and dismiss the case. They maintain that the judgment is void under Federal Rule of Civil Procedure 60(b)(4) because they are immune from suit, and so the Court does not have jurisdiction over them. *See* Defs.' Mem.

Defendants argue that they are immune under both the Diplomatic Relations Act and common-law immunity principles. *Id.* The Court finds that defendants are not immune under the Diplomatic Relations Act, but that they are immune under the common-law doctrine of conduct-based immunity. Therefore, it will grant defendants' motion.

**I.    The five individual defendants are not entitled to diplomatic immunity under the Diplomatic Relations Act.**

The Diplomatic Relations Act ("DRA") of 1978 gives effect to the Vienna Convention on Diplomatic Relations ("VCDR"). *See* 22 U.S.C. § 254a *et seq*. It provides that:

> Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . or under any other laws extending diplomatic privileges and immunities, shall be dismissed.

22 U.S.C. § 254d. "[T]he purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States[.]" VCDR, preamble.

The Vienna Convention provides a "diplomatic agent" immunity from the receiving state's "civil and administrative jurisdiction." VCDR, art. 31(1). A "diplomatic agent" is defined as the "head of the mission or a member of the diplomatic staff of the mission." VCDR, art. 1(e). The

7

members of the "diplomatic staff" include "members of the staff of the mission" which are the "administrative and technical staff and of the service staff of the mission." VCDR Art. 1(c). The VCDR does not define "mission," but the DRA explains that the term "mission includes missions within the meaning of the [VCDR] and any missions representing foreign governments, individually or collectively, which are extended the same privileges and immunities, pursuant to law, as are enjoyed by missions under the Vienna Convention." 22 U.S.C. § 254a(3).

The D.C. Circuit has stated that "[t]he courts are disposed to accept as conclusive of the fact of the diplomatic status of an individual claiming an exemption, the views thereon of the political department of their government." *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949) (internal quotation marks and citation omitted); *see also Zdravkovich v. Consul General of Yugoslavia,* No. 98-7034, 1998 WL 389086, *1 (D.C. Cir. 1998) (per curiam) ("The courts are required to accept the State Department's determination that a foreign official possesses diplomatic immunity from suit. Appellant's claims do not fall within any of the exceptions to diplomatic immunity.") (internal citations omitted); *Jungquist v. Nahyan*, 940 F. Supp. 312, 321–22 (D.D.C. 1996), *rev'd in part on other grounds*, 115 F.3d 1020 ("[T]he determination of a diplomat's status is made by the State Department, not the Court.").

On May 1, 2019, the Department of State submitted a notice to the Court indicating that the individual defendants were not entitled to immunity under the Diplomatic Relations Act, because "none of the individual DRC defendants had been notified to the State Department as members of the DRC's diplomatic mission in the United States." Statement of Interest at 6. The Court is bound to defer to the State Department's conclusion, which is consistent with the information contained in the complaint about the role played by these individuals. *See Jungquist v. Nahyan*, 940 F. Supp. 312, 321–22 (D.D.C. 1996), *rev'd in part on other grounds*, 115 F.3d

1020 (D.C. Cir. 1997) (declining to dismiss claims against defendants under the DRA even though they argued that they "occupied positions given diplomatic and mission status" because there was "no evidence . . . that the State Department consider[ed] that to be the case"). Indeed, the parties do not argue otherwise. *See* Pls.' Resp.; Defs.' Resp. Thus, because the individual defendants were not members of a diplomatic mission, they do not benefit from diplomatic immunity under the Diplomatic Relations Act.

## II.     The defendants are immune from suit under the common-law conduct-based immunity doctrine.

The Supreme Court has held that a foreign official sued for conduct undertaken in his or her official capacity is not a "foreign state" entitled to immunity under the Foreign Sovereign Immunities Act. *Samantar v. Yousuf*, 560 U.S. 305, 325–26 (2010). But the foreign official can claim to be immune under common-law immunity principles. *Id.* at 325. "[A] foreign official is entitled to one of two different types of immunity: status-based or conduct-based immunity." *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 11–12 (D.D.C. 2014), citing *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012); *see Sikhs for Justice v. Singh*, 64 F. Supp. 3d 190, 193 (D.D.C. Aug. 19, 2014). In their original memorandum, defendants claimed both status-based immunity and conduct-based immunity for defendant President Joseph Kabila, Defs.' Mem. at 7–8, and they based their motion to dismiss the remaining defendants on conduct-based immunity only. *Id.* at 8–9.

Conduct-based immunity is determined through "a two-step procedure." *Samantar*, 560 U.S. at 311. The official can "request a suggestion of immunity from the State Department." *Id.* (internal quotation marks omitted). If the State Department takes no action, "a district court ha[s] authority to decide for itself whether all the requisites for such immunity exist[]." *Id.*, quoting *Ex parte Republic of Peru*, 318 U.S. 578, 587 (1943) (internal quotation marks omitted).

9

On April 26, 2018, defendants requested a Suggestion of Immunity on behalf of the individual defendants. Declaration of Francois Nkuna Balumuene [Dkt. # 133-2] ("Balumuene Decl.") ¶ 11; *see* Diplomatic Note, Ex. 1 to Balumuene Decl. [Dkt. # 133-2]. The United States has not responded to this request. Thus, the Court is "authorized to decide whether all the requisites for foreign-official immunity exist."[2] *Lewis v. Mutond*, 918 F.3d 142, 145–46 (D.C. Cir. 2019) (emphasis omitted).

The "requisites for conduct-based immunity" are: (1) the actor must be a "public minister, official, or agent of the foreign state"; (2) the act must have been performed in the actor's "official capacity"; and (3) "exercising jurisdiction" would have the effect of "enforc[ing] a rule of law against the [foreign] state." *Lewis*, 918 F.3d at 146, citing *Restatement (Second) of Foreign Relations Law of the United States* § 66 (1965); *see also Rishikof v. Mortada*, 70 F. Supp. 3d 8, 14 (D.D.C. 2014).

Here, defendants submitted a declaration averring that the individual defendants were officials who accompanied President Kabila as part of the Democratic Republic of the Congo's entourage, Balumuene Decl. ¶¶ 6–7, and plaintiffs do not dispute that the individual defendants are officials or agents of the foreign state. *See* Pls.' Opp. at 6–7. Indeed, plaintiffs' second amended complaint alleges that these individuals are "nationals, officials, agents, representatives . . . of the DR Congo Government." Second Am. Compl. ¶ 12.

---

2   The United States contends that additional discovery is needed to conduct this inquiry. Both parties disagreed. *See* Defs.' Resp.; Pls.' Resp. The Court finds that it is able to conduct the analysis based upon the record, and because the views of the Executive Branch do not "control questions of [common-law] foreign official immunity," even though its opinion is entitled to deference, the Court is not required to ascertain the Department of State's opinion as to whether conduct-based immunity applies. *Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012).

Second, defendants contend that the acts were undertaken as part of the defendants' official duties. Defs.' Mem. at 9. Plaintiffs argue that the acts of "brutally beating and robbing the [p]laintiffs, were not carried out as part of their 'official dut[ies].'" Pls.' Opp. at 7. But plaintiffs do not provide any support for this assertion, and they submit that no additional discovery is needed to illuminate the issue. *See* Pls.' Resp. Defendants, on the other hand, have supported their motion with a sworn declaration that states that "all of the alleged conduct at issue in the lawsuit was performed exclusively in [d]efendants' respective official capacities as members of the Democratic Republic of Congo's diplomatic mission to the United States and in furtherance of the interests of the Democratic Republic of Congo, namely protection of President Kabila." Balumuene Decl. ¶ 10.

Putting aside the question of whether the level of force was justified for that purpose, defendants' assertions are entirely consistent with plaintiffs' own allegations in this case, as plaintiffs have consistently maintained throughout this litigation that the individual defendants were acting in their official capacities. In the second amended complaint, plaintiffs repeatedly alleged that the individual defendants were "acting under the color of state authority, and/or actual or apparent state authority."[3]  Second Am. Compl. ¶¶ 44, 49, 56, 66, 77, 88, 100, 119. In their motion for default judgment against the Democratic Republic of Congo, plaintiffs argued that the individual defendants were acting within the scope of their office or employment. Pls.' Am. & Suppl. Mot. for Default J. & Renewed Mot. for Leave to Amend Pls.' Initial Mots.' for Default J. [Dkt. # 128] at 8. Furthermore, in granting plaintiffs' motion for default judgment, the Court found

---

3   Plaintiffs argue that their allegations in the complaint and their pleadings cannot "confer conduct-based immunity on the Individual Defendants." Pls.' Resp. at 4. But they do not explain why that is the case.

that the "named defendants were acting within the scope of their employment as security officials of the DRC when they committed the acts alleged in the complaint," Mem. Op. at 8, and plaintiffs have not pointed to anything that would warrant revisiting that conclusion.[4]

Third, exercising jurisdiction over the individual defendants would enforce a rule of law against the DRC. This factor "allow[s] for immunity when a judgment against the official would bind (or be enforceable against) the foreign state." *Lewis*, 918 F.3d at 146 (finding the third element not satisfied where only the foreign official was sued in his individual capacity and the plaintiff did not seek to hold the foreign country liable for that defendant's actions). In filing this complaint, plaintiffs sought to hold the Democratic Republic of Congo jointly and severally liable with the other defendants. Second Am. Compl. ¶ 183. As another court in this district held, "[b]y claiming that the [foreign country] is liable for [the individual defendant's] actions, [p]laintiff— by definition—is seeking to enforce a rule of law against the [foreign country]." *Risikof*, 70 F. Supp. 3d at 15. The Court agrees. When plaintiffs filed a lawsuit against the DRC as well as the individual defendants and asserted in their complaint that the DRC is liable for those actions, plaintiffs sought to enforce a rule of law against the DRC. And plaintiffs do not dispute the

---

4   Another court in this district rejected a foreign defendant's conduct-based immunity claim under similar circumstances. In *Rishikof*, the plaintiff was involved in a motor vehicle accident with an individual who was driving a vehicle owned by the Swiss Confederation. 70 F. Supp. 3d at 8. The plaintiff brought a lawsuit against the Swiss Confederation and the driver. The defendants moved to dismiss the driver from the case, arguing that conduct-based immunity precluded the claims against him. The Court granted the motion, in part because the plaintiff had attempted to retreat from his allegation that the driver was acting in an official capacity as an embassy employee. *Id.* at 14. The court observed: "Where a plaintiff blatantly changes his statement of facts in order to respond to the defendants['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Id.* at 14, quoting *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013). The court also observed that "[p]laintiff's revised version of the facts . . . would warrant dismissal of this case" because if the driver was not acting in his official capacity, the Swiss Confederation would be immune from suit. *Id.*

applicability of this factor. *See* Pls.' Opp. at 6–7; Defs.' Reply in Supp. of Defs.' Mot. [Dkt. # 139] at 6–7.

Since all of the factors in the test apply here, the individual defendants are covered by the foreign official conduct-based immunity available as a matter of common law.

Plaintiffs argue that the tortious activity exception to the Foreign Sovereign Immunities Act ("FSIA") provides jurisdiction. Pls.' Resp. at 5. But an individual sued for conduct undertaken in his official capacity is not a "foreign state" entitled to immunity from suit within the meaning of the FSIA. *Samantar*, 560 U.S. at 315–16. Thus, the tortious activity exception does not apply to the individual defendants, and it cannot save the complaint.

Because defendants have satisfied all the requisites for common-law conduct-based immunity, the Court finds that the five individual defendants are immune from suit. Thus, the default judgment against them is void, and the defendants will be dismissed from the case.

## CONCLUSION

In light of the foregoing, the Court will grant defendant's motion to vacate and motion to dismiss for lack of jurisdiction [Dkt. # 133].

A separate order will issue.

_AMY BERMAN JACKSON_
United States District Judge

DATE: June 29, 2020